CHIEF JUSTICE PETERS
delivered the opinion oe the court.
Fielding Neil and C. M. Harwood having been constituted trustees for the Shelby Railroad Company in a writing executed to evidence a sale of the Shelby Railroad, and the property, rights, and franchises belonging thereto, to the Louisville, Cincinnati & Lexington Railroad Company, instituted this suit on the 2d day of September, 1872, against the last-named company and various other defendants, classified in the caption so as to designate the character in which they are sued and the several interests they represent.
In their petition the trustees allege, in substance, that at an annual meeting of the stockholders of the Shelby Railroad Company in Shelbyville, on the 7th of May, 1872, they passed a resolution directing their board of directors to contract for the sale of their railroad, property, and franchises to the Louisville, Cincinnati & Lexington Railroad Company for and at the price of $456,144, the purchaser to assume the then existing debt of the Shelby Railroad Company of $88,500, secured by mortgage, and the residue of the purchase-price was to be paid in the stock of the Louisville, Cincinnati & Lexington Railroad Company at par, to be divided pro rata among the stockholders of the Shelby Railroad Company; and that it was provided in said resolution that all subscriptions previously made to extend the Shelby road in the direction of Lawrenceburg, if collected and used, should be paid for by the Louisville, Cincinnati & Lexington Railroad Company, and it should bind itself to extend the Shelby Railroad within three years; that a majority of all the stockholders were present at said meeting, and voted for said resolution; and that the board of directors, in obedience thereto, negotiated and concluded a contract of sale with the Louisville, Cincinnati & Lexington Railroad Company, evidenced by a writing, a *64 printed copy of which they say they file as a part of their petition ; and that the board of directors of the Shelby Railroad Company approved said contract on the 2d of September, 1872; and that the directors of the Louisville, Cincinnati & Lexington Railroad Company approved said contract on the 27th of August, 1872. And it is alleged that by the terms of the agreement of the parties the contract of sale was not to take effect until the same had been ratified by the stockholders of both of said companies.
On the subject of the ratification of the contract by the Louisville, Cincinnati Lexington Railroad Company the allegation is that the stockholders of the latter company fully authorized and approved the same at a meeting du.ly called and held in Louisville, Ky., in the month of June, 1872. And of the other company it is alleged: “ It was also approved and ratified by the stockholders of the Sheby Railroad Company at a meeting'duly called and held in Shelby ville, Ky., on the 2d day of September, 1872, a majority of all the stockholders being present and voting for the same.”
After setting apart out of the purchase-price of the railroad, property, and franchises of the Shelby Railroad Company a sufficiency to pay the debt secured by mortgage, and which the Louisville, Cincinnati & Lexington Railroad Company had assumed to pay, the last-named company was to issue its stock to the plaintiffs, as trustees for the Shelby Railroad Company and its stockholders, to be disposed of as stipulated for in the written contract between the parties; and the Louisville, Cincinnati & Lexington Company was not to be liable for any misappropriation or improper distribution of the stock issued by it.
After various other allegations, not necessary to be repeated here, the plaintiffs refer to the different classes of defendants, as designated in the caption of their petition, in numerical order; aver that each class consists of many persons, too *65 numerous to be brought before the court within any reasonable time, and ask that certain persons named by them may be set apart by the court to defend the suit for the respective classes with whose interests they are identified. That course was acquiesced in, and the various, and in some respects antagonistic, interests were defended by the several persons suggested in the petition.
The plaintiffs aver that there are conflicting interests arising out of said contract, which should be adjudicated and settled; and they pray that the amount of stock each class of stockholders may be entitled to be ascertained and provided for; what amount of stock is to be issued to them, and that the same be distributed; that the amount of available assets for the payment of debts be ascertained; that the Louisville, Cincinnati & Lexington Railroad Company be required to issue its stock and deliver it to plaintiffs, according to its contract; and for general relief.
On the 26th of September, 1872, the Louisville, Cincinnati & Lexington Railroad Company filed its answer, and admitted that it had purchased the railroad, property, and franchises, etc., of the Shelby Railroad Company on the terms set forth in the written contract filed as a part of the plaintiffs’ petition; and it avers it is able and willing to assume all the liabilities and perform all the obligations covenanted to be done and performed by it; that it has no knowledge or information sufficient to form a belief as to who will be entitled to the consideration to be paid by it for the Shelby Railroad Company’s property, franchises, etc., purchased by it, nor whether the persons entitled thereto are correctly enumerated and classified.
It asks the court to ascertain the interests of all the parties in the purchase-price to be paid by it, and that the plaintiffs be directed to whom and in what portions the same shall be distributed. It makes its answer a cross-petition against the *66 defendants classed as tax-payers in the railroad district in Shelby County referred to in the petition of plaintiffs; and it unites with the plaintiffs in the prayer to permit W. L. Waddy and Warner Jesse, two tax-payers in said district, to defend for the others, who are too numerous to be brought before the court; and asks that the rights of all the parties may be adjudicated and settled.
W. L. Waddy and Warner Jesse, for themselves and those for whom they are permitted to defend, answer and say that there are many allegations in the petition which they do not deem material for them to answer. As to the alleged sale of the Shelby Railx’oad, its property, franchises, etc., by the Shelby Railx’oad Company to the Louisville, Cincinnati & Lexington Railroad Company, they deny that it was valid or binding oxx the stockholders of the first-named compaixy; say it was ixx violatioxx of its chax’tered axid vested xfights; that they and those whonx they x-epresent never approved or ratified said alleged sale; and insist that it was without legal authority, and passed xxo title to the pretended purchaser. And they aver that they do xxow, and will from time to time, for themselves and all other stockholders, assert all rights belongixxg to them and of which said pretexxded sale attempted to deprive them. They say that by the terms on which the tax-payers of Shelby County agreed to pay by taxation $300,000 to construct said railroad they were to have axxd receive certificates of stock in said Shelby Railroad Co. whenever they shall have paid as nxuclx as $50 for tax, which was the substance of the contract between said railroad company and the tax-payex’s of said county, as provided in the charter of said railx’oad company; that the entire subscription of $300,000 remains xxnpaid, and that an annual tax is being levied and collected from the tax-payers of said couxxty to pay the intex’est oix said debt at eight per cent per annum, and will continxxe uxxtil the whole is paid; that by the terxns of the sale the tax-payers are deprived of their right to *67 certificates of stock for taxes paid, which is a violation of their rights under the charter; that the voters were induced to vote the tax upon themselves on the conditions and representations that the Shelby Railroad would be extended through the southeastern portion of the county, in the direction of Harrodsburg and Danville; that $400,000 were voted by the people of the county as stock in the Ohio Railroad Company, which road is comparatively of no benefit to the tax-payers of the southeastern portion of the county, upon the express condition that $100,000 thereof should be expended on the extension of the Shelby Railroad to Lawrenceburg, and but for that condition said tax would not have been voted by the people; that by the terms of said sale the Shelby Railroad becomes extinct, and no provision is made for its extension, even if every dollar necessary therefor should be paid, and the tax-payers immediately interested are forever deprived of the right to a fulfillment of the terms of their contract, whereby they were' induced to vote said tax; and therefore aver that said contract is not only a violation of their chartered and vested rights, but is a fraud on them and all the tax-payers. They therefore pray that said contract may be annulled and all their rights be protected. Nor do they intend, by any thing asserted herein, to deprive or estop themselves from instituting such independent legal proceedings for the full protection of all their rights and to set aside said contract, if any such should be hereafter necessary.
Frazier, who answered for one class of tax-payers, set forth the amount claimed by those for whom he answered, and asked that the amount claimed should be adjudged to those entitled thereto.
W. L. Waddy and Warner Jesse filed an amended answer and an answer to the cross-petition of the Louisville, Cincinnati & Lexington Railroad Company, in which they set forth somewhat in detail the rights of the tax-payers in the railroad *68 district and Shelby County, and allege that justices of the peace, representing tax-payers in said county, were not permitted to vote at the stockholders’ meeting to ratify the sale, and that said meeting was irregular and was not called and held in accordance with law; that the notice and call for the meeting was not published thirty days prior to the day of said meeting; and make this answer 'a cross-petition against the Louisville, Cincinnati & Lexington Railroad Company.
On the 10th of June, 1873, s’aid defendants filed a second amended answer, in which they allege that they are and were stockholders in the Shelby Railroad Company when the resolution was adopted for the sale 'of the road and when the meeting was held to ratify the sale, and that they dissented from and voted against the resolution to sell the road, and voted against the ratification of the sale.
We have already seen that, by the terms of the contract, the sale was not to be effectual until ratified by the stockholders of both companies. The charter of the Shelby Railroad Company conferred on the corporation all the powers it could lawfully exercise, and no contract could be made to materially alter or destroy the- corporation without legislative authority; hence, by an amendment of the charter approved March 10, 1854, the power to transfer or sell all the assets, real and personal estate, rights and privileges of said company on such terms and conditions as may be sanctioned and aj>proved by the stockholders owning a majority of the stock of said company.
Another amendment to the charter, approved Feb. 3,1869, section 12, provides that no contract that the president and directors of said company may make with the Louisville, Cincinnati & Lexington Railroad Company, or any other railroad, shall be valid until the same shall be ratified by the stockholders of this company.
According to the literal interpretation of the section quoted, *69 any sale, to be valid, should be ratified by the unanimous vote of the stockholders; and this interpretation is fortified by the fact that the first amendment authorizing the sale requires its ratification, in express terms, by the stockholders owning a majority of the stock, while the last amendment omits the majority feature, and requires the ratification by the stockholders of this company.
But waiving that view of the subject, and conceding that the ratification should be by the stockholders owning a majority of the stock, that ratification could only take place by calling together the stockholders in a general meeting at a particular place designated, upon legal and due notice. The mode of procuring the meeting of the stockholders for the purpose of determining the question is not specifically pointed out in either of the amendments cited. But the original act of incorporation authorizes general meetings of the stockholders, and the 8th section of said act provides that a general meeting of the stockholders may be called at any time during the interval between the annual meetings by the president and directors, or a majority of them, or by the stockholders owning one fourth of the whole stock subscribed, upon giving thirty days’ public notice of the time of holding the same, which shall be at some public place in Shelbyville named in the advertisement; and when any such meetings are called by the stockholders such notice shall specify the particular reason for such call.
It can not be supposed that a shorter or less specific notice would be required to stockholders of a meeting to determine whether all the corporate property should be sold and the corporation destroyed than of a meeting to transact business of less importance. But it is clear that when the meeting was to be called to determine whether the stockholders would or not ratify the sale of their road, a notice thereof of less than thirty days would be insufficient. This was a special meeting, *70 to be called upon an emergency, for the transaction of particular business. The notice relating thereto should have specified the occasion of the summons and the business proposed to be transacted, so as to call the attention of each member to the circumstances and the matters to be considered. (Green's Brice's Ultra Vires, page 354.)
The only notice of the meeting of the stockholders of the Shelby Railroad Company found in this record is as follows:
“Shelby Railroad Notice.
“Office Shelby R. R. Co., Aug. 17, 1872.
“The meeting of the stockholders of the Shelby Railroad Company for the purpose of ratifying or rejecting the contract of sale of the property and franchises of the company to the Louisville, Cincinnati & Lexington Railroad Company has been postponed by the directors until 10 o'clock A. m. on the 2d of September, 1872, at which time it will certainly be held at the court-house in Shelbyville. F. Neil, Pres’t S. R. R ."
That notice was never published till the 29th of August, 1872, in the Shelby Sentinel, a newspaper published in Shelby-ville, four days before the meeting was to come off.
The act for the sale of the road fails to provide how the option should be made by the stockholders; but they could not make the option without notice of the time and place of the meeting of the stockholders; and if there was no legal notice, no such meeting could take place and no option could be expressed.
As therefore there was no notice given to the stockholders of the meeting to ratify or reject the sale, it can not be regarded as ever having been consummated, and should therefore be regarded as a nullity.
Wherefore the judgment is reversed, and the cause is remanded with directions to set aside the alleged sale on equitable principles, and for further proceedings consistent herewith.