Hill v. Rich Hill Coal Mining Co.

---

HILL v. RICH HILL COAL MINING COMPANY, *Appellant.*

### Division Two, December 16, 1893.

1. **Corporation:** CONTRACT TO BUY LAND: DIRECTORS: QUORUM. A corporation is not bound by a cortract to purchase land entered into by a quorum of its directors made of interested parties.

2. ———: DIRECTORS: SPECIAL MEETING: NOTICE. A special meeting of the directors is void if the notice thereof required by the by-laws are not given.

3. ———: ———: ADJOURNMENT: BY-LAWS. Where the by-laws give authority to a less number than a majority of the directors to "adjourn from time to time," a formal adjournment entered on the records is meant.

4. ———: ———: SPECIAL MEETING: BY-LAWS. Where the by-laws authorize a special meeting of the directors only on the call of the president or a majority of the members of the board, such meeting, if otherwise called, is void.

5. Contract: LAND: SPECIFIC PERFORMANCE. A vendor cannot enforce specific performance as to part of a contract for the purchase of land.

6. ———: ———: ———: CORPORATION: ESTOPPEL. Where land is purchased by a corporation for the coal thereon, the refusal of the vendor to permit the buyer to examine it, taken in connection with his conduct in contributing by his vote as the director of the corporation to procure it to purchase the land is sufficient ground to bar the vendor's right of specific performance.

7. Corporation: DIRECTORS: SPECIAL MEETING: NOTICE. The mere presence of a director of a corporation at a special meeting of the directors held without notice does not make such meeting legal nor contracts entered into thereat valid.

8. Contract: SPECIFIC PERFORMANCE: ESTOPPEL: DEPARTURE. Where plaintiff sues on a written contract to enforce specific performance thereof he cannot recover on averments in his reply on an alleged estoppel which constitute a departure.

9. ———: ———: CORPORATION: COLLATERAL ATTACK. The fact that a railroad company in violation of the state constitution controls a coal company can only be complained of by the state, such question cannot be collaterally raised in a suit for the specific performance of a contract.

*Appeal from Bates Circuit Court.*—HON. JAMES H. LAY, Judge.

REVERSED AND REMANDED.

The plaintiff instituted this proceeding to obtain specific performance of an alleged contract, made with the defendant corporation, for the purchase of a certain tract of land in Bates county, known as the "*Robert M. Handley Land,*" and particularly described in the peti-

tion. The pleadings are very voluminous. The answer, besides a general denial except as to the incorporation of defendant, contains a number of defenses, which, so far as necessary, will be adverted to hereafter, as well as the reply, which was lengthy. There was much evidence introduced, and the logical result of the rulings made was a decree in behalf of plaintiff, which, in full, is as follows:

"WILLIAM S. HILL, Plaintiff,
                    *v.*
"THE RICH HILL COAL MINING Co., Defendant. ⎰

"*First.* Now, at this day, this cause coming on for trial, and the plaintiff appearing in person and by Silas W. Dooley, Esq., his attorney, and the defendant by its attorneys, R. T. Railey, Esq., and Messrs. De Armond & Smith, the parties respectively announce ready for trial, and, this being an action in equity for the specific performance of contract for the sale and purchase of real estate, the matters in issue are duly submitted to the court for hearing and adjudication on the pleadings and proofs; and, after hearing the testimony and evidence adduced by the respective parties, and the argument of counsel in this behalf, respectively, the court doth find that on the twenty-second day of May the said plaintiff and defendant duly contracted for the sale by plaintiff, and purchase by defendant, of the following described real estate, situate in the county of Bates and state of Missouri, to-wit: The tract of land known as the 'Robert M. Handley Tract,' containing six hundred and eleven and one-half acres, particularly described as follows, to-wit: The southeast quarter of section number seventeen (17), and the east half of the southwest quarter of said section number seventeen (17); also, the northeast quarter, and the east half of the northwest quarter, and the northeast quarter of the southwest quarter, all in sec-

tion number twenty (20); and the northwest quarter of the southwest quarter, and the west half of the northeast quarter of the southwest quarter; also, one acre off of the north end of the southwest quarter of the southwest quarter, and one-half acre off of the north end of the west half of the southeast quarter of the southwest quarter, all in section number twenty-one (21); also, one acre off of southwest end of the southwest quarter of the northwest quarter of said section number twenty-one (21),—all the above and foregoing lands being in township number thirty-eight (38), of range number thirty-one (31); also, an undivided one-half of lot number seven (7), of section number thirty-six (36), in township number thirty-nine (39), of range number thirty-one (31), except right of way existing on said lands at said date,—at the price and sum of thirty thousand, five hundred and seventy-five dollars ($30,575.00), less the sum of two thousand dollars, school fund mortgage then existing on a part of said lands, which sum of two thousand dollars defendant covenanted and assumed to pay as part of said purchase price of thirty thousand, five hundred and seventy-five dollars.

"*Second.* The court doth further find that, at the time of the making of said contract, the board of directors of defendant consisted of five persons; that the by-laws of defendant required that notice should be given of the meeting of said board of directors.

"*Third.* That said contract was made at a meeting of the board of directors of defendant, held in the city of New York on or about the twenty-second day of May, 1890, of which meeting no previous notice had been given; that at said meeting the only directors present were Edwin Gould, William S. Hill, the plaintiff, and his father, James A. Hill; that all the stock of the defendant not owned by the said William S. Hill and

James A. Hill was owned by the Missouri Pacific Railway Company, through others, who held the nominal title to the same as trustee for said railway; that only nominal amounts were held by the other directors, to qualify them as directors, and that they held the same for, and acted in the interest of, the Missouri Pacific Railway Company, and under the direction of the said Edwin Gould, as the trustee.

"*Fourth.* That the said William S. Hill and James A. Hill were, at the time of the making of said contract, both interested in making said sale to defendant, but that they were not acting as trustee, or in any representative capacity; the other interest in the stock of defendant not held by them being held for the Missouri Pacific Railway Company, represented at the time by said Edwin Gould, who at the time held a controlling vote in the meeting, being at the time the owner of a large majority of the stock as trustee for said railway.

"*Fifth.* That on or about the tenth day of June, 1890, a meeting of the board of directors was held in the city of St. Louis, the said William S. Hill, James A. Hill and R. M. McDowell, directors, only, being present. The court does not find that any previous notice of said meeting, had been given, but does find that at said meeting said contract was ratified and approved, and that about the same time the said contract was ratified and approved by D. S. H. Smith, secretary and treasurer of said company, in whose name a considerable amount of stock of defendant stood, as trustee for the other stockholders of defendant.

"*Sixth.* That, shortly after said contract was made, defendant went upon the premises sold, and drilled a number of holes, prospecting for coal; that it does not appear what the result of said prospecting was.

"*Seventh.* That, after said prospecting, defendant,

on or about the twenty-fifth day of September, 1890, refused to carry out said contract and take said land, and that by said prospecting and refusal the market value of said premises was greatly depreciated.

"*Eighth.* That defendant never, until its answer was filed in this suit, asked to avoid the contract on the grounds set forth in the answer, and that the delay therein was unreasonable, under all the facts in the case.

"*Ninth.* That the failure to give the notices of the said meetings was the neglect of the Missouri Pacific Railway Company, the real owner and controller of the defendant company, and *that defendant cannot take advantage of its own failure in that regard.* The court doth further find that plaintiff has duly complied with the terms of the contract on his part to be performed, and duly tendered his deed of conveyance for all of said lands, in due and sufficient form, and duly acknowledged by himself and wife. The court doth further find that plaintiff and defendant mutually agreed on the tenth day of June, 1890, that defendant should pay to plaintiff six per cent. per annum interest on the purchase price of said land to be paid by defendant to plaintiff (being the sum of $28,575), from May 31, 1890, until such time as said purchase money was fully paid by defendant to plaintiff.

"*Tenth.* The court doth further find that plaintiff has paid $130 interest on said school-fund mortgage, which should have been paid by defendant under the terms of said contract, and that plaintiff is not entitled to recover of defendant the two and one-half per cent. on said purchase price, as incidental expenses incurred by him in the purchase thereof.

"*Eleventh.* It is therefore considered, adjudged, and decreed by the court, that plaintiff have a judgment and decree in this behalf, specifically performing said

contract, and that plaintiff have judgment for the sum of $28,575 purchase money, and interest thereon from May 31, 1890, at six per cent., and $130 school-fund interest paid, as found aforesaid, being in all the sum of $30,491 and also judgment for his costs in this behalf laid out and expended; and that execution issue therefor, and that plaintiff deliver to defendant a good and sufficient deed for said premises on the payment of said sum of money."

For convenience's sake, each paragraph of the decree has been numbered in the margin.

*H. S. Priest* and *R. T. Railey* for appellant.

(1) A director of a corporation cannot legally represent himself and the corporation when dealing with each other. Nor can he enforce against the corporation any contract thus made. *Grumley v. Webb,* 44 Mo. 444; *Rea v. Copelin,* 47 Mo. 82, 83; *Bent v. Priest,* 86 Mo. 482; *Ward v. Davidson,* 89 Mo. 454; *Company v. Davidson,* 95 Mo. 473; *Bank v. Iron Company,* 97 Mo. 45; *Insurance Co. v. Hope,* 8 Mo. App. 410, 411; *Patrick v. Gas Co.,* 17 Mo. App. 468; *Bennett v. Car Roofing Co.,* 19 Mo. App. 349; *Daboue v. Fanning,* 2 Johns. Ch. 252; *Coal Co. v. Sherman,* 30 Barb. 554; *Gardner v. Ogden,* 22 N. Y. 332; *Butts v. Wood,* 37 N. Y. 318; *Duncomb v. Railroad,* 84 N. Y. 190–198. (2) The Hills being interested in the contract could form no part of the necessary quorum at the meeting of defendant's board of directors. *Bennett v. Car Co.,* 19 Mo. App. 349; *Ward v. Davidson,* 89 Mo. 454; *Foster v. Co.,* 92 Mo. 88; *Bank v. Collins,* 7 Ala. 95; *Butts v. Wood,* 37 N. Y. 318; *Jones v. Morrison,* 31 Minn. 148. (3) Article thirteen of defendant's by-laws provides that a special meeting of the board of directors may be called at any time by the president or a

majority of the members of the board, giving ten days' notice, in writing, to each of the directors. Having failed to comply with the law in regard to said notice, there was no legal meeting of the board of directors at either New York or St. Louis. *Tel. Co. v. Tel. Co.*, 44 N. J. Eq. 573; *Reeves v. Ferguson*, 31 N. J. Eq. 130; *Doern Beecher v. Lumber Co.*, 21 Or. 573; Same Case, 28 Pac. Rep. 899; *Simon v. Association*, 14 S. W. Rep. 1102; *Baldwin v. Canfield*, 26 Minn. 43; *Herrington v. Liston*, 47 Iowa, 11–14; *Barrett v. Dolan* 35 N. W. Rep. (Ia.) 189; *Thompson v. Williams*, 76 Cal. 153; Green's Brice's Ultra Vires, 438 and notes; Angell & Ames on Corporations, sec. 492; 1 Beach on Private Corporations, 279–470; Boone on Corporations, sec. 63; 1 Morawetz on Private Corporations, sec. 531. (4) There being nothing in our law requiring that directors should be stockholders, it was perfectly competent for Coleman and McDowell to act as directors of defendant company, even if their stock had been transferred. 17 Am. & Eng. Encyclopædia of Law, p. 81; 1 Beach on Priv. Corp., sec. 220; Boone on Corp., sec. 140. (5) The undisputed record shows that one share of stock each appears upon the books of the company in the names of Coleman and McDowell. They were, and are, directors *de facto*, and their acts as such cannot be inquired into in this collateral proceeding. *Railroad v. McPherson*, 35 Mo. 13; *Bank v. Mfg. Co.*, 32 N. J. Eq. 237; Boone on Corp., sec. 140; Pierce on Railroads, p. 26 and cases cited. (6) It is well settled that directors cannot represent the corporation except when acting as a board. 17 Am. & Eng. Encyclopædia of Law, p. 83; *Johnson v. School District*, 67 Mo. 320; *Baldwin v. Canfield*. 26 Minn. 54–55; *Co. v. Kuntz*, 34 Mich. 89; *Titus v. Railroad*, 37 N. J. Law, 102; *Bank v. Christopher*, 40 N. J. Law, 436; *Lockwood v. Co.*, 42 Mich. 539. (7) This suit is

brought for the specific performance of a contract solely as to the Handley land. The contract, if made in New York, was an entirety, and could only be specifically performed as such. *Eads v. City*, 42 Mo. 113; *Robinson v. Railroad*, 75 Mo. 495; *Railroad v. Jackson*, 24 Conn. 516; Waterman on Specific Performance of Contracts, sec. 135; 1 Parsons on Contracts, sec. 334. (8) If the contract alleged to have been made in New York was invalid, then the court committed error in admitting, in evidence, the alleged proceedings of said board, at St. Louis. *Beatty v. Transportation Co.* (Can.), 19 Am. & Eng. Corp. Cas. 171; *Ringer v. Holtzclaw, supra.* (9) Defendant, having denied in its answer the execution of the contract sued on, had the right under the general issue, to rely upon the statute of frauds. *Wildbahn v. Ribidoux*, 11 Mo. 659; *Hook v. Turner*, 22 Mo. 333; *Allen v. Richard*, 83 Mo. 55; *Springer v. Kleinsorge*, 83 Mo. 152; *Bernhardt v. Walls*, 29 Mo. App. 209.

*S. W. Dooley* for respondent.

(1) The absolute rule invoked by appellants, that no matter how fair the transaction, plaintiff being a director and interested, it cannot stand, has never been followed. Courts of equity have applied it to the circumstances of nearly every case. *St. Louis v. Alexander*, 23 Mo. 48; *Kitchen v. Railroad*, 69 Mo. 25; *Foster v. Milling Co.*, 16 Mo. App. 150, see p. 155; *Foster v. Milling Co.*, 92 Mo. 79; *Co. v. Crow*, 36 Mo. App. 28; *Wilson v. Jackson Co.*, 23 Mo. App. 132; *Hotel Co. v. Wade*, 97 U. S. 13; *Oil Co. v. Mabury*, 91 U. S. 587; *Stratton v. Allen*, 16 N. J. Eq. 229; *Railroad v. Claghorn*, 1 Spear's Eq. (S. C.) 545. (2) Directors may deal with the corporation the same as with individuals, and, unless fraud is shown, the act is

valid. *St. Louis v. Alexander*, 23 Mo. 483; *Kitchen v. Railroad*, 69 Mo. 254. (3) And where the corporation is represented by properly authorized agents, then the contract between director and corporation is valid. Morawetz on Corporations, sec. 527, *supra; Patrick v. Gas Co., supra;* Appellant relies on the case of *Bennett v. Car Company*, 19 Mo. App. 349, and *Ward v. Davidson*, 89 Mo. 454. (4) The contract was for the benefit of the company. It needed land to continue its operations; in fact, respondent was loaning it money, as it was out of funds. *Foster v. Milling Co., supra; Co. v. Crow, supra:* (5) On May 22, as is urged by appellant, this land had not been paid for by plaintiff, and yet he relying on this contract, completed his purchase by paying out about $30,000—in effect, loaning the company that much money, as it was without funds, and with a full knowledge of all the facts by all of the directors and stockholders from that time, no action was taken by the corporation, as testified to by Dr. Smith, and on the twenty-fifth of September, this letter signed by Edwin Gould, is received. The rule is that in order to make a rescission effectual, the disavowal must be promptly exercised. *Melton v. Smith, supra;* Fry on Spec. Perf. 409, sec. 703; *Dezell v. Odell,* cited in 96 Mo. p. 278; Morawetz on Priv. Cor. [2 Ed.], sec. 524; 16 Am. Law Rev., p. 919; *Hyde v. Lakin,* 35 Mo. App. 365. And this is true even, if the act be *ultra vires. Burgess v. St. Louis C. Railroad,* 99 Mo. 496. (6) A contract can be enforced as to each parcel of land separately. Waterman on Spec. Perf., par. 296; Fry on Spec. Perf., par. 806. (7) Specific performance will be decreed, though the title was not perfect when the bill was filed, if it appear that it can be perfected before judgment or decree. *Luckett v. Williamson,* 37 Mo. 395; *Isaacs v. Skrainka,* 95 Mo. 518; *Burge v. Bock,* 44 Mo. App. 69. (8) The waiver of prompt delivery

of the deeds, although alleged in reply, was not necessary, as time was not considered essential in the dealings between the parties. *Melton v. Smith, supra; Mastin v. Grimes*, 88 Mo. 485; *Walker v. Owens*, 25 Mo. App. 594; Story's Eq. Jur., sec. 776. (9) It is well settled that a corporation can act through agents the same as individuals. *Hotel Co. v. Newman*, 30 Mo. 122; *Fayles v. Bank*, 49 Mo. 382; *Preston v. Lead Co.*, 51 Mo. 23. (10) In general it may be laid down that not only the appointment, but the authority of the agent of a corporation may be inferred from the adoption or recognition of his acts by the corporation or its directors. *Fayles v. Bank, supra;* Field on Corp., sec. 283; *Kiley v. Forsee*, 57 Mo. 390; *Donnell v. Bank*, 80 Mo. 165; *Campbell v. Pope, supra*. (11) And unless promptly disavowed, such act will be binding. *Chouteau v. Allen*, 70 Mo. 290; *Bank v. Frick*, 75 Mo. 178; Revised Statutes, 1889, 2511; *Bank v. Coal Co.*, 86 Mo. 125.

SHERWOOD, J.—I. Under charter provisions, the board of directors of the defendant corporation is composed of five members, and at the time the facts occurred which gave origin to the present litigation, and since that date, consisted of the following persons, to-wit, Edwin A. Gould, R. M. McDowell, W. P. Coleman, James A. Hill, and W. S. Hill. Edwin Gould was president of the corporation, and McDowell general manager. In this posture of affairs, the following proposition, being the same referred to in plaintiff's petition, was made to defendant by plaintiff:

"RICH HILL, Mo., May 19, 1890.

"*Mr. Edwin Gould, President the Rich Hill Coal Mining Co., New York City, N. Y.*

"DEAR SIR:—I have succeeded in purchasing from E. B. Adams a tract of land, embracing about 360 acres, a mile or two south of Rich Hill; also 611½ acres

from Robert M. Handley, adjoining the foregoing. The location of these tracts is undoubtedly familiar to you. I have done this to secure the lands, believing them to be valuable, but will transfer them to the Rich Hill Coal Mining Company if it wants the same. If the Rich Hill Coal Mining Company concludes to take these lands, I will turn them over at the same price and terms at which I purchased them, any time between now and the 29th inst. The cost of the Adams property is $10,800. Terms: One-third down; balance in one and two years, with six per cent. interest. The cost of the Handley property is $30,575 cash. To the above should be added some incidental expenses. Yours, truly,

"W. S. HILL."

Pursuant to this proposition, a special meeting of the directors was held in New York on the twenty-second of May, 1890, at which were present Edwin Gould, James A. Hill, and plaintiff. The other members of the board were not present, nor were they notified in writing or otherwise; indeed the meeting was had upon an agreement made on the same day it was convened, and within a few minutes after such agreement was reached. Article 13 of the by-laws of the defendant, which was adopted in 1880, and has been in force ever since, provides that "a special meeting of the board of directors may be called at any time by the president or a majority of the members of the board, giving ten days' notice in writing, to each of the directors." During the same year, another by-law (number 14) was adopted by the defendant corporation: "The attendance of a majority of the board of directors shall be necessary to constitute a quorum for the transaction of business; a less number may adjourn from time to time."

The decree finds that the board of directors con-

sisted of five members; that there were but three of the directors present at the meeting in New York; that no notice was given to the others of the meeting, as required by the by-laws, and "that the said William S. Hill and James A. Hill were, at the time of the making of said contract, both interested in making said sale to defendant, but that they were not acting as trustee, or in any representative capacity." The petition avers "that on the nineteenth of May, 1890, the plaintiff proposed *in writing* to sell said land [which had been theretofore in the petition particularly described] to defendant for $30,575, and his incidental expenses incurred in the purchase thereof; that on the twenty-second of May, 1890, at a meeting of its board of directors held in the city of New York, the defendant, in writing, duly accepted said proposition." The resolution adopted at that meeting, whereby the proposition was accepted was the following: "*Resolved*, that the plat of land located in Bates county, Missouri, known as the 'R. M. Handley and E. B. Adams land,' be purchased by this company according to the terms of the proposition for sale of same, contained in a letter from Mr. William S. Hill, dated May 19, 1890, addressed to Mr. Edwin Gould, president; and the proper officers of this company are hereby fully authorized and instructed to carry out said purchase in behalf of this company."

In the present case, then, there were only three of the board of directors present at the meeting held in New York city on the twenty-second of May, 1890, which professed to accept the written proposition of plaintiff, which was the only offer or proposition made by plaintiff to sell the land to defendant, which offer was not in any manner changed or modified at any subsequent period. As before stated, the lower court found that plaintiff and James A. Hill were both

interested in making the sale of the land to defendant. That plaintiff was thus interested is too apparent for comment; and the evidence adduced fully sustains the finding of the lower court that James A. Hill, his father, was also interested. He had advised his son to buy the land, and had furnished him with the money for the purpose, etc., and was therefore in no position to be a disinterested adviser of the defendant.

This being the case, as there were not but three of the directors present, and two of these disqualified by reason of interest, it results that as there was no valid quorum present, that no binding contract was made by plaintiff with the defendant corporation in regard to the land in question. The books abound with instances illustrating the wholesome principle that no one, especially in an official position of trust and confidence, is permitted to be exposed to the temptation necessarily incident to a situation where duty prompts to go one way, and self-interest another. Such, of course, would be the situation of a director when attempting to sell for himself, and to buy for the corporation. He can neither make such a contract in the beginning, nor enforce it in the end. It is true, the court below, while finding that plaintiff and his father were directors, and interested in the subject-matter of the proposed contract, yet at the same time finds, in paragraph 4 of the decree, that *"they were not acting as trustee, or in any representative capacity."* How this could be, it is inexpressibly difficult to understand. Though a director is not technically a trustee, yet, as an accurate author aptly remarks: "The relation between the directors of a corporation and the company itself is, however, in many respects, a fiduciary or trust relation. * * * The directors of a corporation are ordinarily invested with the most extensive powers of management. They are empowered to represent the

company in all of its business transactions and ventures, and the entire corporate affairs are placed in their charge, upon the trust and confidence that they shall be cared for and managed for the common benefit of the shareholders, and in accordance with the provisions of the charter agreement. It is manifest, therefore, that the directors of a corporation occupy a position of the highest trust and confidence, and that the utmost good faith is required in the exercise of the powers conferred upon them. * * * They have no right, under any circumstances, to use their official positions for their own benefit, or the benefit of any one, except the corporation itself. It is for this reason that the directors have no authority to represent the corporation in any transaction in which they are personally interested in obtaining an advantage at the expense of the company. The corporation would not have the benefit of their disinterested judgment under these circumstances, as self-interest would prompt them to prefer their own advantage to that of the company. Accordingly, it has been held, in numerous cases, that the directors of a corporation have no authority to bind the company to any contract made with themselves personally, or to represent it in any transaction with third persons, in which they have a private interest at stake." 1 Mor. on Priv. Corp. [2 Ed.], secs. 516, 517.

Upon the principle thus announced, this court has always firmly stood, as shown by the cases cited from our own reports, and there are none in those reports which, when rightly understood, assert a different doctrine. Wherever, in those reports, a director has been a contracting party, there have been others disinterested, sufficient to constitute a valid quorum. Touching the same point, it is said in a comparatively recent case: "He (Munson) stood in the

attitude of selling as owner and purchasing as trustee. The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case. It prevents frauds by making them, as far as may be, impossible, knowing that real motives often elude the most searching inquiry, and it leaves neither to judge nor jury the right to determine, upon a consideration of its advantages or disadvantages, whether a contract made under such circumstances shall stand or fall. It can make no difference in the application of the rule in this case, that Munson's associates were not themselves disabled from contracting with the corporation, or that Munson was only one of ten directors, who voted in favor of the contract." *Munson v. Railroad*, 103 N. Y. 73. The case just cited, as will be seen, takes even stronger ground than our own court has taken.

II. Now, as to notice to the other directors. Article 13 of the by-laws requires ten days' notice to be given in order to call a special meeting. This course was not pursued in respect to the meeting in New York, as plainly appears from the evidence. In *People v. Batchelor*, 22 N. Y. 134, Judge SELDEN forcibly remarks: "It is not only a plain dictate of reason, but a general rule of law, that no power or function entrusted to a body consisting of a number of persons, can be legally exercised without notice to all the members composing such body." To the same effect see 1 Mor. Priv. Corp. [2 Ed.], secs. 479, 481, 531, 532; Green's Brice's Ultra Vires, 438, and notes; *Tel. Co.*

*v. Tel. Co.*, 44 N. J. Eq. 573; *Doernbecher v. Lumber Co.*, 21 Or. 573; Angell and Ames Corp., sec. 492; 17 Am. and Eng. Encyclopædia of Law, 93 *et seq.*, and other cases cited by counsel for defendant. Under these authorities, the special meeting in New York must be held void for the additional reason that no notice of it was given to the absent directors.

III. The same line of remarks as aforesaid are applicable to the meeting of the board of directors in St. Louis on June 10, 1890, because only McDowell and the two Hills were there present, and Director Coleman, though notified by telegram, was not present. Edwin Gould was not notified, as he testifies, and Dr. Smith does not testify to the contrary. He merely says he *thinks* he notified Gould by telegram, though *when* he notified him he does not state. On the twenty-ninth of May, it seems, it was agreed between James A. Hill and McDowell to hold a meeting in St. Louis on June 2; *they consented to the waiving of the ten days' notice.*" This meeting was not held on June 2, nor was any record of its convening entered, nor any adjournment of record made. It seems that James A. Hill informed Dr. Smith, the secretary of the defendant corporation, of W. S. Hill's absence, and requested the *secretary* to adjourn the meeting. In this way it appears that the special meeting was "postponed" to June 9; but it was not held then, because there was no sufficient number of directors present, and no adjournment of record was then made, and no notices were served on the absent directors, except such as were served on the twenty-ninth of May aforesaid.

Article 14 of the by-laws of the defendant, heretofore quoted, gave authority to a less number than a majority of the directors to "adjourn from time to time." Of course, this means a formal adjournment, entered on the records in the usual way; and if this

had been done on June 2, and the *hour* fixed for the meeting on June 9, and a similar adjournment taken on the latter date to a *certain hour* on June 10, then the meeting on the latter date would possibly have been valid, provided the directors had all been properly notified for ten days prior to June 2. *Thompson v. Williams*, 76 Cal. 155; *Manufacturing Co. v. Vassault*, 50 Cal. 534; *Warner v. Mower*, 11 Vt. 385; *Stockholders, etc., v. Railroad*, 12 Bush, 62.

And these observations are subject to the further qualification that the notice given on May 29, had emanated from an authoritative source. In the case at bar, what notices were given by the secretary, Dr. Smith, were given May 29, but it does not appear that he was authorized to call a meeting. Under article 13 of the by-laws, already quoted, a special meeting of the board of directors could only be called by "the president or a majority of the members of the board," etc., so that a meeting otherwise called possesses no validity. *Society v. Sperry*, 10 Conn. 200; *Reilly v. Oglebay*, 25 W. Va. 36; *Stebbins v. Merritt*, 10 Cush. 27; 1 Mor. Priv. Corp., section 480.

And it is clearly laid down in the authorities that the by-laws of a corporation, when properly adopted, are as binding on the members of such body as is a provision contained in the charter itself (1 Mor. Priv. Corp. section 490); and the same principle of law which dominates the giving notice of time, place, and manner requisite in calling stockholders' meetings equally applies to meetings of directors (*Id.* sec. 531). From this, it necessary follows that two of the directors were powerless to waive the ten days' notice which article 13 of the by-laws required. The meeting in St. Louis on June 10 must, therefore, be regarded as invalid as that held in New York.

IV. But conceding, for argument's sake, the

validity of the meeting in New York, and of the subsequent one in St. Louis, a question arises on the pleadings themselves, which now requires consideration. The resolution already copied from the minutes of the meeting held in New York, which resolution was introduced by James A. Hill, and seconded by plaintiff, shows in an unmistakable manner that but *one contract* was attempted to be made between plaintiff and those who profess to represent the corporation. This resolution also conforms in that respect to the previously written letter of plaintiff, in which he speaks of the two tracts as contiguous, and proffers "to turn them over at the same price and terms at which I purchased them," etc. One of the witnesses also testified that the two tracts were in one enclosure. And both letter and resolution are in accord with the conversation had by Edwin Gould with plaintiff prior to the resolution being adopted, for Gould testifies, and his testimony is undisputed: *"I asked him whether we could buy one of these tracts without the other, and he said that they both went together. His offer was to sell the two.*

The facts undoubtedly show the alleged contract for both tracts of land to be an *entirety.* Where such a contract is thus made, the authorities are unbroken in their uniformity in the assertion that it must be enforced as an *indivisible integer*, or not at all; it cannot be enforced by *piecemeal.* Fry on Spec. Perf. of Contracts [3 Amer. Ed.], secs. 802, 804, 806; Wat. on Spec. Perf. of Contracts sec. 389 *et seq*; 2 Story's Eq. Jur. [13 Ed.], sec. 778, and cases cited; *Dalby v. Pullen*, 3 Sim. 29; *Baldwin v. Fletcher*, 48 Mich. 604; 2 Beach, Mod. Eq. Jur., secs. 623, 625; *Kenner v. Bitely*, 45 Fed. Rep. 133; *Cato v. Thompson*, 9 L. R. Q. B., div. 616. As plaintiff is attempting to enforce only a portion of the alleged contract, that attempt cannot prove successful, as is shown by all of the authorities. It would be

beyond all reason and precedent to permit him to split his contract in two,—retain such portion of the land as suits him, and then enforce specific performance as to the residue, which he does not desire to retain. The bare announcement of such a claim is sufficient for its prompt repudiation.

V.    There are other reasons equally cogent for the denial of the relief plaintiff seeks. The land in question, to-wit, the whole tract alleged to have been contracted for, was evidently purchased for *coal* land. This was the chief object in view in making the purchase. Yet when McDowell began prospecting on the Handley land, as was the custom in that country when coal lands were about to be bought, plaintiff forbade this to be continued, and it was stopped. This action of plaintiff would seem to have been the result of a fear that no coal would be discovered on the land if the prospecting were allowed to continue. Taking this conduct of plaintiff in connection with that already related at the two different meetings aforesaid, in which while directly interested in the subject-matter, he contributed by his vote to produce the result desired, such conduct cannot be regarded in a favorable light by a court of equity, where relief of the character here invoked is asked.

The contract in this instance is *executory;* and where this is the case, and its enforcement is sought, it will be refused where, considering all the circumstances of the case, it is not certain, fair and just in all its parts, because such enforcement is not a matter of absolute right in any circumstances, but resting in the sound discretion of the court; and such an agreement will not be enforced, if the decree would produce injustice between the parties, or where it would be inequitable under all the circumstances. For this reason it is that a court of equity will permit a party to defend

himself by evidence to resist a decree, where a plaintiff would not be permitted to make out his case by like evidence. 2 Story on Equity Jurisprudence [13 Ed.], secs. 769, 770; *Veth v. Gierth*, 92 Mo. 97. Here, plaintiff does not come into court with clean hands, for it was by an abuse of his fiduciary relation to the defendant corporation as director that he secured the alleged contract on which he now relies. On this ground, also, a court of equity should decline to interfere in his behalf.

VI. Recurring to paragraph 4 of the decree and quoting it in full, it is as follows: "That the said William S. Hill and James A. Hill were, at the time of the making of said contract, both interested in making said sale to defendant, but that they were not acting as trustee, or in any representative capacity, the other interest in the stock of defendant not held by them being held for the Missouri Pacific Railway company, represented at the time by said Edwin Gould, who at the time held a controlling vote in the meeting, being at the same time the owner of a large majority of the stock as trustee for said railway."

It will be at once perceived that the lower court took the singular view that notwithstanding the meeting in New York was held without notice, notwithstanding plaintiff and his father were directors, and were interested in the alleged contract then made, yet, that, as Edwin Gould held a large majority of the stock in the defendant corporation as trustee for the Missouri Pacific Railway company, and that as he *"held a controlling vote in the meeting,"* therefore, the meeting in New York, without notice and without a quorum, was valid, and the assumed contract made thereat also valid. But this view leaves entirely out of consideration the idea that the directors are the governing body of a corporation, and cannot either represent or bind

such corporation, *except when duly assembled and acting as a board, and not otherwise.* It is needless to say that many authorities speak this language. 17 Am. and Eng. Encyclopædia of Law, 83; *Baldwin v. Canfield,* 26 Minn. 43; *Finley Co. y. Kurtz,* 34 Mich. 90; *Turnpike Road Co. v. Craver,* 45 Pa. St. 386; *Johnson v. School District,* 67 Mo. 320, and numerous other cases. Were the law otherwise, it is easy to see that an individual director could destroy the corporation by his own individual and unaided action. *Baldwin v. Canfield, supra,* and cases cited. Moreover, Edwin Gould did not have a *"controlling vote at the meeting."* He had but *one* vote as director, and that was all.

VII. But, further, as to the alleged contract made in New York. Plaintiff based his right to relief upon it, but yet took a departure from it in his reply, set up an alleged *estoppel,* and was permitted, as shown by paragraph 9 of the decree, to recover thereon. But, of course, this was erroneous. The plaintiff had a right to relief, if at all, on his alleged contract in writing. Failing in that, he had no standing in court, because of the provisions of the statute of frauds. *Ringer v. Holtzclaw,* 112 Mo. 519. See, also, *Lanitz v. King,* 93 Mo. 513, and *Mohney v. Reed,* 40 Mo. App. 99, as to introducing matter in reply which belongs to the petition.

VIII. There is no finding in the decree, nor is there any evidence in the record to show that possession was taken of the Handley land by defendant. Indeed, under plaintiff's contract with Handley, *he* had no right to take possession of that land until payment was made therefor. Besides, plaintiff requested McDowell to quit his borings on the land, which was done. Furthermore, the boring was done under a prevalent custom, and, unless it was shown to have been done in a manner referable solely to the alleged

contract made in New York, it would amount to nothing. *Emmel v. Hayes*, 102 Mo. 186.

IX. Something has been said in plaintiff's brief about the action of the Missouri Pacific Railway Company's owning the major portion of the stock in the defendant corporation, and having it held by Edwin Gould as its trustee, and thereby influencing the affairs of the latter corporation, falling under the ban of section 7 of article 12 of the constitution, which declares: "No corporation shall engage in business, other than that expressly authorized in its charter or the law under which it may have been or hereafter may be organized, nor shall it hold any real estate for any period longer than six years, except such as may be necessary and proper for carrying on its legitimate business." However this may be, it is certain such a matter could not be taken advantage of in a collateral way, but must be investigated by the state in its sovereign capacity. *Martindale v. Railroad*, 60 Mo. 508; *Kinealy v. Railroad*, 69 Mo. 658; *Hovelman v. Railroad*, 79 Mo. 632, and cases cited. And, at any rate, the fact of disobedience to constitutional commands would afford no excuse for rendering a decree against the property of the offending company, and against that of its trustee, Edwin Gould, without bringing them before the court, or giving them an opportunity to be heard. An ordinary regard for fundamental principles of justice requires that no one should be passed upon, either in person or estate, without such opportunity aforesaid.

X. There are numerous other errors assigned and apparent on this record. It is unnecessary to notice or discuss them, since ample grounds have been shown why the decree should not be permitted to stand. It is accordingly reversed and the cause remanded, with directions to the lower court to enter a decree dismiss-

ing plaintiff's petition and canceling the resolutions aforesaid, on which the petition is grounded. All concur.