Smith v. Richardson.

FORD SMITH, Receiver of ACTIVE BUILDING & LOAN ASSOCIATION, Appellant, v. WILLIAM C. RICHARDSON, Administrator of SAMUEL B. BEALL, Respondent.

St. Louis Court of Appeals, December 13, 1898.

1. **Private Corporation:** PLEDGE OF ASSETS: ULTRA VIRES. No corporation can bind itself or its stockholders by a contract *expressly* prohibited by its charter, by a statute, or by the general law. Such contracts are strictly *ultra vires* and create no obligation as far as they are executory, although the consideration therefor may have been received and enjoyed by the corporation.

2. ———: ———: CONTRACT OR ACT IN EXCESS OF POWER.   An act or contract merely in excess of the power granted to corporations, but which is not expressly forbidden either by its charter or the general law of the state, although lacking affirmative authority for its performance on account of the silence, on that subject of its charter or the general law, may yet, if the contract has been executed by the other party, and its consideration received by the corporation, bind the latter, on the principle of estoppel, so that it could not be annulled by the corporation without a return of the consideration received by it.   Contracts of this kind are not in the strict sense of the term, *ultra vires*.   They are only unauthorized acts of corporations, and not being void, but only voidable, the option to avoid them is lost if they have been wholly executed or executed by the adverse party.

3. ———: ———: ESTOPPEL, GROUND OF.   The estoppel of a corporation to annul an executed agreement, or one whose consideration it has received (which though unauthorized is not prohibited by law or its charter) is grounded on the idea of preventing a fraud by the corporation on the party whom it had misled into the performance of the agreement.

4. **Agreement for Extension of Time:** CONSIDERATION FOR A CONTRACT.   An agreement for the extension for a definite time of an overdue debt constitutes a valuable consideration for a contract based thereon.

5. ———: CONTRACT UNAUTHORIZED. Want of authority of the president of the association to make the contract renders it voidable only not an absolute nullity, and in the case at bar, no' steps having been taken to avoid the agreement prior to its full performance by both parties, it is too late for such action now.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

THOMAS A. RUSSELL for appellant.

The primary design of a building and loan association is to accumulate a fund by the savings of its members. Endlich on B. & L. Ass'n, sec. 91; sec. 17 of By-laws. And being a mutual association this fund is the property of all its members and can not be diverted by the association from its original purpose. (Arling v. Kenton B. &. L., 26 Am. Law Register, 273.) It is a well settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act or derived therefrom by necessary implications, regard being had to the object of the grant. Carroll v. Campbell, 108 Mo. 550; State ex rel. v. Murphy, 130 Mo. 10. They must exercise such powers in a reasonable manner and strictly within the scope of the act calling them into being. St. Louis v. Reever, 44 Mo. 547; Grohmann v. Brown, 68 Mo. App. 630. As stated by the court in the latter case the statute under which building associations are organized neither expressly or by necessary implication, have the authority of a bank of discount. It nowhere gives countenance to the notion that building associations are authorized to borrow money. The exercise of this function is beyond the limits of the grant of their

statute powers. And if the association was without power to borrow the money it could not, after the debt became due, barter away the assets of its members to secure time in which to pay a debt it never legally owed. One who deals with the officers and agents of a corporation is bound to know the extent of their authority and their powers. Alexander v. Caldwell, 83 N. Y. 480, and 122 N. Y. 135. The officers of a corporation have no power to pledge its securities for a preexisting debt, and defendant was chargeable with notice of this want of power. Alexander v. Caldwell, *supra;* Angel and Ames on Corporations, 301; Chicago, etc., v. James, 22 Wis. 194; Jackson v. Campbell, 5 Wendell, 572. The acts of officers must be such as are in the line of their duty or agency. Winsor v. Bank, 18 Mo. App. 665. The assignment of a mortgage by an officer of a corporation without the direction or subsequent ratification of the corporation is invalid. Jackson v. Campbell, *supra;* Hoyt v. Thompson, 5 N. Y. 320–334. An officer of a corporation can not assign or pledge its assets without the authority of the board of directors. Hyde v. Larkin, 35 App. 365: Webb v. Lumber Co., 68 App. 546–552; Hutchinson v. Green, 91 Mo. 367. The president and cashier of a bank can not assign its choses in action to creditors as a security for an antecedent debt without authority of its board of directors. Bank v. Bank, 60 N. Y. 278–291. The assignment by the officers of a corporation of a bond or mortgage, unless made in pursuance of the resolution by the board of directors, is void. Jackson v. Campbell, 5 Wendell, 572–576; Johnson v. Bush, 3 Barber's Chancery Reports, 207; Thompson on Corporation, sec. 4718. A bill in equity may be maintained to compel the surrender of a note and mortgage by the person claiming to hold them under a fraudulent transfer to him. Holden v. Hoyt, 134

Mass. 181; see, also, page 177. And the receiver may maintain action where the mortgage is assigned without authority. Holden v. Phelps, 135 Mass. 61. Such an assignment could only be made by a resolution of the board of directors. Calumet Paper Co. v. Haskell Co., 144 Mo. 331. And it must be at a meeting called for that purpose. The assignment being void it could not be ratified by the officers, nor by the board itself.

L. M. CONKLING for respondent.

Several questions arise and are involved in this appeal. Did Beall execute his part of the contract and loan the money to the association in good faith and without fraud on his part, and without notice of the want of power and authority (if such want existed) in the association to borrow the money? Did the association receive the $2,600 from Beall, and was it used and applied to the use and benefit of the corporate property and to better the corporate interests of the association? Did the association obtain from the defendant an extension of one year's time in which to pay the balance of the Beall note, in consideration of paying $600 of the principal and accrued interest on the note, and in consideration of turning over the Farrell bond and deed of trust to the administrator as security for the payment of such balance due on said note, and was this extension of time a benefit and an advantage to the association? Did the administrator, the defendant, give said extension of time in good faith and without fraud on his part, and without notice of the want of power or authority (if such want existed) in said association to make such a contract, and was such consideration a lawful one and sufficient to support the contract? Did any one of the officers or its board of directors

or shareholders of said association, or any one of them, or any of its creditors, at any time, in any manner or on any occasion, ever object to the borrowing of the $2,600 from Beall by said association, or to its making said contract of extension with the administrator, or has any of them, in any manner, and at any time complained of or ever made any direct or indirect objection to the transaction from the beginning down to the day of the trial of the action. * * * The following questions also present themselves and are directly involved in this appeal: First. Will a court of equity lend its aid and power to abrogate and annul the terms and conditions of an executed contract entered into and performed by an innocent party in good faith without fraud or notice, and relieve the other party from his or its obligations under such executed contract, and where the party asking to be thus relieved induced the innocent party to enter into the contract, and received from such innocent party the proceeds of the contract and used and applied them to promote and better his or its corporate interests and property? Second. Will a court of equity permit a party to induce another to loan him money, and the money is loaned in good faith and without fraud or notice, and the money is received and used for the benefit of the party receiving it, and then, after thus using the money turn around and say, "Yes, I induced you to make the contract and you fully executed your part of the contract in good faith and without notice, and I used the proceeds of the contract for my own benefit and to increase the value of my property. * * * A private corporation will not be allowed by the court to set up the plea of *ultra vires* where the contract has been performed and executed by the other party, and the corporation has had the fruits or received the proceeds of the contract and has enjoyed the benefits arising from

the same. 47 Mo. App. 391–55; Id. 538; 41 Mo. App. 665; 63 Mo. App. 367; Id. 68; 630; Id. 47; Railway v. McCarthy, 96 U. S. 267; Ray's Contractural Limitations, 147, 148; Morawetz on Corps. [Ed. 1882], secs. 125, 123, 31, 32. Drug Co. v. Robinson, 81 Mo. 18. If a corporation enters into a contract with another party and that party performs his part of the contract in good faith and is innocent of any *mala fides* in the transaction, and the consideration of the contract only remains to be paid or delivered by the corporation, the defense of *ultra vires* by the corporation will not be entertained by the court in an action by the other party to enforce the terms of the contract. (Grant v. H. Clay Coal Co., 80 Pa. St. 208; Railroad v. Pa. Trans. Co., 83 Pa. St. 160; 24 Barb. (N. Y.) 374; 21 N. Y. 124; 47 Ind. 407; Boone on Corp., sec. 101, and cases in note 4.) The defense of *ultra vires* will not be permitted to be made in a court of equity, whether set up by or against a corporation, where it would not promote justice, but would work a legal wrong. (63 N. Y. 68; 96 U. S. 267; Boone on Corporation, sec. 101, and cases cited in note 3.) A corporation' will not be allowed to set up and interpose the plea of *ultra vires* where its contract has been performed by the other party and the corporation has received the fruits and benefits and appropriated the same to its own use and advantage. (Ray on Contractural Limitation, 147, 148, and cases cited in note 1; Morawetz on Corp. [Ed. 1882], secs. 104, 105, 179, 30, 31, 32, 40, 50.) While the courts may refuse in a given case to sustain acts or contracts *malum in se* or *malum prohibitum* on the ground that it is against good conscience and contrary to public policy, yet if one of the contracting parties be not *pari delicto*, but entered into the contract in good faith and without any fraudulent or wrongful intent, and in good faith performed and executed his part

of the contract, and the other party, being a corporation, has received the proceeds of the contract and has appropriated them to its own use, and applied them to the promotion and betterment of its corporate interests and attempts or seeks thereafter to annul or defeat the contract by setting up and pleading the defense of *ultra vires*, the court will not sustain such defense, but will decree a performance of the contract by the corporation. Morawetz on Corp., secs. 30, 99, 100; 103, and cases cited in note 1, also Id., sec. 105 and cases cited in note 3 [Ed. 1882.]; see 96 U. S. 640; 2 Col. 259; 4 Johns. Ch. 370; 98 U. S. 628; 53 N. Y. 62, 68; Morawetz on Corp., sec. 47.    *    *    *

BOND, J.—On the twenty-first of March, 1894, the Active Building & Loan Association, No. 2, of St. Louis, borrowed the sum of $2,600 from S. B. Beall, executing its note therefor, due in six months, with seven per cent interest. In April following the payee Beall died, and defendant Richardson as public administrator took charge of his estate. The note matured on the twenty-first of September, 1894, and the administrator demanded payment therefor, whereupon the said Building & Loan Association paid $600 of the principal and all accrued interest, and for the consideration of an extension of time of payment of the remainder of the note for one year from that date by its president deposited and pledged with said administrator "as collateral security for the payment of said note" a certain bond of Daniel and Mary Ferrell, secured by a deed of trust, which had been executed to said association, and in default of payment of the note upon the expiration of the time for which it was extended, authorized the administrator to sell said collateral note and trust deed at public or private sale, and to purchase the same for his protection, and in case of a

surplus after paying the debt secured and the expenses incurred, to pay over the same to the association. An agreement reciting these stipulations was drawn up in writing and signed by the president of the association and the administrator of Beall. The contract was performed by the forbearance to sue on the part of the administrator and by the delivery of the collateral on the part of the corporation. On the —— day of October, 1897, the building association, upon the petition of the supervisors of such companies, was placed in the hands of plaintiff as receiver, who thereupon demanded the return of said collateral, and upon the refusal of the administrator to surrender it, brought the present action, setting forth the foregoing facts, and alleging that the pledging of said collateral "was without consideration, and was illegal and void," and praying that the written contract therefor be declared void, and that the defendant administrator be enjoined from negotiating it, and ordered to return it to plaintiff, and for general relief.

The answer admitted the facts stated in the petition, denied its legal conclusion, and averred further that the pledge of said collateral was made and accepted in good faith.

In addition to the facts shown by the pleadings, it appeared on trial that between the date of the contract between the president of the association and the administrator of Beall up to the beginning of this suit, the association paid $1,450 on the note in the hands of the administrator, leaving a balance due of about $950. It further appeared in the evidence that no further authority or ratification of the board of directors of the building association was had for the making of the contract on its behalf by its president. There was a decree dismissing plaintiff's petition, from which this appeal is prosecuted.

In determining the obligation of a private corporation for acts commonly termed *ultra vires*, an important distinction, noted in every well reasoned case, is sometimes overlooked. No corporation can bind itself or its stockholders by a contract *expressly* prohibited by its charter, by a statute, or by the general law. Such contracts are stricty *ultra vires* and create no obligation as far as they are executory, although the consideration therefor may have been received and enjoyed by the corporation. On the other hand, an act or contract merely in excess of the power granted to corporations, but which is not expressly forbidden either by its charter or the general law of the state, although lacking affirmative authority for its performance on account of the silence, on that subject, of its charter or the general law, may yet, if the contract has been executed by the other party and its consideration received by the corporation, bind the latter on the principle of estoppel so that it could not be annulled by the corporation without a return of the consideration received by it. Contracts of this kind are not in the strict sense of the term *ultra vires*. They are only unauthorized acts of corporations, and not being void, but only voidable, the option to avoid them is lost if they have been wholly executed or executed by the adverse party. Thompson Con., sec. 6016 *et seq.* The reason a contract strictly *ultra vires* as above defined, can never be enforced while anything remains to be done thereunder, is that a corporation deriving all its power to act from its constraining articles and the general law can make no lawful contract in violation of the positive edicts of either. On the other hand, the estoppel of a corporation to annul an executed agreement or one whose consideration it has received (which though unauthorized, is not prohibited by law or its charter), is

grounded on the idea of preventing a fraud by the corporation on the party whom it had misled into the performance of the agreement. A careful view of the controlling decisions will fully sustain this distinction between the enforcible and the nonenforcible acts of private corporations. The cases in which corporations are not permitted to plead the invalidity of their contracts, appear to have been clearly understood by the learned counsel for appellant, who states in his brief on that subject, to wit: "It is conceded that if the loan had been made on the faith of the collateral afterward the defense of *ultra vires* would have been open to the association. But that is not the case here, for Beall when he loaned his money to the association demanded no security." This quotation is correct in stating what would have been the effect if the note given to Beall for the money borrowed of him had been secured at the time by a pledge. But the learned counsel does not meet the question made in this record when he says in substance that the failure of Beall to demand a security for his loan prevents any obligation on the part of the corporation for a pledge made to his administrator to secure an extension of payment of the note, after its maturity, for a definite time. The law is well settled that an agreement for the extension for a definite time of an overdue debt, constitutes a valuable consideration for a contract based thereon. In other words, it affords the same kind of consideration which was given when the debt was created, and hence it is equally efficacious in upholding a trust deed or pledge based on such extension. Cass Co. v. Oldham, 75 Mo. 50; Martin v. Nixon, 92 Mo. 26; Bank v. Gay, 114 Mo. 203; Bank v. Love, 62 Mo. App. 378; Napa Valley Wire Co. v. Rinehart, 42 Mo. App. 171; Murdock v. Lewis, 26 Mo. App. 236; Jones on Mort., sec. 459. In the case at bar, after the maturity of the Beall note, the holder

agreed in writing to forbear its collection for one year upon the delivery to him of the collateral sued for. This contract was fully performed by both parties— the corporation got the delay of one year, and the holder of the note received the collateral. Having had the benefit of its agreement—the nature of which is such that it can not be restored—the corporation now seeks to recover what it gave while retaining what it received. Upon the plainest principles of justice this can not be done under a contract which, like the one in question, does not violate the provisions of its charter or the general law. That the contract of the president of the association was unauthorized by its board of directors and unratified by them as a body, may be conceded. This at most rendered it voidable only, not an absolute nullity. No steps having been taken to avoid the agreement prior to its full performance by both parties, it is too late for such action now. City of Goodland v. Bank, 74 Mo. App. 365, and cases cited; St. Louis Drug Co. v. Robinson, 81 Mo. 18; Field v. Roanoke Inv. Co., 123 Mo. 603; Hill v. Rich Hill Coal Min. Co., 119 Mo. 9; Ins. Co. v. Smith, 117 Mo. 261; Sparks v. The Dispatch Trans. Co., 104 Mo. 531; Lysaght v. St. Louis Operative Stone Masons' Ass'n, 55 Mo. App. loc. cit. 547; Winscott v. Inv. Co., 63 Mo. App. 367; Grohmann v. Brown, 68 Mo. App. 630. The trial court did not err in dismissing appellant's petition, and its decree is affirmed. All concur. Judge BIGGS in the result.

SEPARATE OPINION BY JUDGE BIGGS.

I think it proper that I should state the reasons for my concurrence in the conclusion reached by my associates. I have no fault to find with the discussion in the opinion. It has been held repeatedly by this court and the supreme court that when a corporation borrows

and appropriates money, it will not be heard to say in an action to recover it back that it did not have the power under its charter to borrow it. I do not under_ stand counsel for appellant to controvert this. The contention of appellant here is, that it had no power under its charter to pledge its assets to secure the payment of an antecedent debt, and that even though such power existed, the president of the association had no authority to make the pledge without an order of the board of directors authorizing him to do so. The majority opinion properly disposes of the first point, but ignores the second. The latter question arises on the record, is presented in the briefs, and ought to be disposed of.

*Prima facie* the president of the association had authority by virtue of his office to assign the note as collateral security. Musser v. Johnson, 42 Mo. 74; Mo. Fire Clay Works v. Ellison, 30 Mo. App. 67; Bambrick v. Campbell, 37 Mo. App. 460; State ex rel. v. Heckart, 62 Mo. App. 426; Winscott v. Inv. Co., 63 Mo. App. 367. There was no evidence of want of such authority on the part of the president, but on the contrary an officer of the corporation testified that the president was in the habit of making such transfers without previous authority to do so. The appellant relies on the decision of the Kansas City Court of Appeals in the case of Hyde v. Larkin, 35 Mo. App. 365. That court held that in the absence of affirmative proof of direct authority from the board of directors, or of a subsequent ratification by them, or of a business usage or custom, it would be presumed that the president of a business corporation had no authority to pledge its assets for the payment of a corporate debt. In that case the president of a corporation pledged an asset of the corporation to pay a corporate liability.

There was no proof of previous authority by the board of directors to make the assignment, nor of a subsequent ratification by them, nor of a custom of business from which it could be inferred that the president possessed the authority to make the pledge. If it be conceded that the Kansas City court of appeals declares the correct rule, the decision in no wise helps the appellant, for the reason that it was clearly shown that the president of appellant was in the habit of making such transfers without first obtaining the consent of the board of directors.

For the foregoing reasons I concur in affirming the judgment.