JOHN H. EAKINS v. THE AMERICAN WHITE BRONZE COMPANY.

*Corporations—Organization of company in another state—Authority of directors—Services of officers.*

1. In the absence of showing any such power, it cannot be presumed that a Michigan manufacturing company has corporate authority, or that its directors have implied authority, to organize companies in other states, and subject its *home* stockholders to liability for assessments and losses in such enterprises; and certainly individual directors, not acting in any formal way, have no power to employ agents for any such purpose, or to stipulate expressly or impliedly for their compensation.

2. There is no implied power in corporate officers, not having special authority, to bind the company for the services of an employé. *Kalamazoo Novelty Mfg. Co. v. McAlister,* 36 Mich. 329.

3. While it is competent for a corporation to employ and pay a director or officer for *special* work, presumptively services rendered by a director for the *general* benefit are gratuitous, without some preliminary arrangement under which he acts.

Error to Wayne. (Brevoort, J.) Argued June 12, 1889. Decided June 28, 1889.

Assumpsit. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*E. S. Grece (E. H. Sellers,* of counsel), for appellant.

*Moore & Moore (John Atkinson,* of counsel), for defendant.

CAMPBELL, J. Plaintiff sued defendant to recover compensation for alleged services in getting up, or helping to get up, a corporation in Iowa to which defendant sold some patterns, and apparently some rights under patents. As the court below took the case from the jury after they failed to agree, it is only necessary to look at the case far enough to

see whether there was anything to go to the jury. The record is not explicit on some important matters, and fails to show with precision the extent or purpose of some of the principal transactions.

It appears that defendant is a Michigan corporation engaged in making monuments and other articles of a metal called "white bronze," and has some rights on patents which presumably relate to that metal. The articles of incorporation are not set out, and it only appears inferentially that defendant's interest in the patent extended over some other states. Just what it was we do not know.

Plaintiff seems to have had a part in organizing the defendant corporation, and it would appear that in the first instance liberal divisions were made of beneficial interests to get the scheme afloat. Plaintiff was one of the directors. The white bronze business was started in the United States, as he shows, in 1874, and plaintiff was an agent before defendant company was organized, which seems to have been in 1881. In 1884, according to plaintiff's showing, one Oakes had some sort of contract from defendant, and was trying to get up a company in Des Moines, Iowa. Not being immediately successful, plaintiff, Eakins, says he was urged by George W. Moore, the vice-president, and Mr. Stewart, the secretary and treasurer, to go out to Des Moines, and try to get the scheme launched. He went out, and, by the usual methods of persuasion and urgency, succeeded in getting up a company that was to purchase patterns and some other rights from defendant, for which defendant was to have pay partly in money and partly in stock.

There was never any action by the board of directors authorizing plaintiff to act for them, or giving him any powers, or agreeing to pay him for what he did. On his return from Iowa, where he was engaged off and on some three or four weeks, he was given a sum of $1,000, which it is claimed by defendant was not paid as due him by defend-

ant, but as an acknowledgment of his services. It does not appear that this was voted to him by the directors, but it came from the defendant in some way. He subsequently presented a bill for $5,000, on which he credited the sum of $1,000. The directors refused to recognize any claim, and would not pay him anything more. Offers were made him by defendant to arbitrate, but nothing came of them, and this suit was brought, claiming $10,000, at which rate plaintiff estimated the value of what he did.

The court ruled that he had no legal claim.

It does not appear that any contract relations existed at any time in what plaintiff did. The journey to Iowa was made with a desire on the part of these persons to get up a scheme which would benefit defendant and help themselves as stockholders. It is not testified that even his associates ever promised him pay for services. The only thing looking to plaintiff's remuneration at all is at the end of a letter from Stewart, in which he says:

"You will have your reward for your labor, all in good time."

The most that can be made out of the facts is that the parties were trying to get up something which would be to their mutual advantage, and plaintiff, if it succeeded, might expect liberality. All three of these parties were directors, but they did not profess to act officially, and, had the scheme failed altogether, it does not appear from the record that plaintiff would have had any legal demand against defendant.

In the absence of showing any such power, it cannot be presumed that a Michigan manufacturing company has corporate authority, or that its directors have implied authority, to organize companies in other states, and subject its Michigan stockholders to liability for assessments and losses in such enterprises. And certainly individual directors, not acting in any formal way, have no power to employ agents for any such purpose, or to stipulate expressly or impliedly

for their compensation. It was held in *Kalamazoo Novelty Co. v. McAlister*, 36 Mich. 327, 329, that there is no implied power in corporate officers, not having special authority, to bind the company for the services of an employé. And it would be a very dangerous doctrine to hold that a director, having no authority to enter upon the furtherance of a scheme beyond the ordinary business, can, merely because it turns out to be profitable, set up a claim for payment for services which in law were voluntary, and not requested or employed. It has been held competent for a corporation to employ and pay a director or officer for special work, but presumptively services rendered by a director for the general benefit are gratuitous, without some preliminary arrangement under which he acts. He may have some excuse for expecting liberality, but he has no demand for pay, enforcible in law, for what was never authorized or requested of him by the corporation. The court below rightly rejected his claim.

The judgment must be affirmed, with costs.

The other Justices concurred.