HARDEE et al. v. SUNSET OIL CO. et al.

(Circuit Court, S. D. California. May 8, 1893.)

No. 315.

1. CONSTRUCTION OF CONTRACT—CORPORATION PROMOTERS.

R. agreed to convey certain property to H., or to a corporation to be formed by H., and H. agreed to pay R. $5,000, to issue to him half of the capital stock of the corporation, and to deposit with the corporation's treasurer $25,000 to be used in developing said property. *Held,* that the $25,000 paid to the corporation should not be credited to R. on the books of the company.

2. CORPORATIONS—DIRECTORS—APPOINTMENT OF RECEIVER—FRAUD.

The directors of a corporation levied an assessment on its stock, and, on failure to pay same, advertised for sale only the stock of one who held nearly one-third of the entire stock, although other stockholders were also delinquent; it appearing, however, that the other stockholders had promised to pay. At a meeting of the directors at which only the president, secretary, and treasurer were present, they voted themselves salaries, which, however, they never collected. *Held,* that the action of the directors regarding their salaries was void, and that the irregularities are not sufficient to justify appointing a receiver for the corporation, it being shown that no actual fraud was intended.

In Equity. Bill by Nina Richardson Hardee and others against the Sunset Oil Company and others for an injunction, and the appointment of a receiver.

Smith & Winder and A. J. King, for complainants.
Sheldon Borden, for defendants other than Field, administrator.
Wells, Monroe & Lee, for Field, administrator.

ROSS, District Judge. The complainants are heirs of Cosmo B. Richardson, deceased, and brought this suit to enjoin the defendants from proceeding to sell certain shares of the stock of the defendant company, owned by Richardson at the time of his death, for a delinquent assessment thereon, and to annul a resolution passed by the board of directors of the defendant company, fixing the salaries of certain of its officers, and to procure the appointment of a receiver to take possession of the property of the corporation, because of alleged fraudulent mismanagement of the affairs thereof by the directors of the company. The case shows that Richardson was the owner of certain oil claims situate in the Camulos petroleum mining district, in Ventura county, of this state, and, being such owner, on the 16th day of June, 1890, entered into the following contract in writing with George W. Handy, of San Francisco, Cal.:

"Whereas, the party of the first part [Richardson] is the owner of eight hundred acres of petroleum oil territory in Camulos petroleum mining district, Ventura county, California, with water and timber thereon for fuel, hereby agrees with the party of the second part [Handy] to sell and convey to said party of the second part, or to any corporation which said second party may form, all his right, title, and interest in and to the following described oil claims, to wit, all those certain oil claims known and recorded in said Camulos petroleum mining district as the 'Bishop,' 'Atlanta,' 'Georgia,' 'Sparta,' and 'Savannah,' the same being all of section 12, and the southeast quarter of section 11, in township 4 north, range 19 west, San Bernardino

base and meridian, for and in consideration of the sum of five thousand dollars, gold coin of the United States, to be paid to the party of the first part by the party of the second part within sixty days from the date hereof; and the said party of the first part agrees to pay all liens and incumbrances affecting said party.

"Should party of the second part form a corporation to operate and develop said oil claims, one-half of the capital stock of such corporation is hereby agreed to be allotted to said party of the first part, and the said party of the second part shall have the option of purchasing three-tenths of said first party's interest of said stock within one year from date of incorporation for the sum of thirty thousand dollars, and shall repay to party of the first part all the moneys he has expended in extinguishing the liens against said property.

"And it is further agreed by the party of the second part that the sum of twenty-five thousand dollars shall be deposited in the hands of the company's treasurer within sixty days from date, said sum to be expended in the development of said oil claims.

"Time is [of] the essence of this contract."

Subsequently, Handy caused to be incorporated under the laws of the state of California the defendant Sunset Oil Company, and to this company Richardson, by deed expressing the consideration of $5,000, and which he received, conveyed the oil claims mentioned in the contract. The capital stock of the corporation was fixed at 100,000 shares, of the par value of $10 each, and of those shares 30,000 were issued to Richardson, and 20,000 to W. S. James and his assigns, as a commission from Richardson for his services in effecting the contract between Richardson and Handy. Handy subscribed for 39,990 shares of the stock. Handy was elected president of the corporation; W. S. James, secretary; and A. Jenks, treasurer. Subsequently, and from time to time, but not within 60 days from the date of the contract between Richardson and Handy, the latter paid to the treasurer of the company $25,000, which sum was used in the development of the property.

It is contended on the part of the complainants (and this is the main point relied upon by them) that the $25,000 so paid by Handy should have been credited upon the books of the corporation to Richardson; in other words, that the true meaning of the contract between Richardson and Handy was that Richardson should be paid by Handy, for his conveyance of the oil claims, the sum of $30,000.

I think it very clear that such is not the proper construction of the agreement between the parties. The contract, rightly construed, provided, as the consideration for the conveyance of the claims to any corporation Handy should organize for the purpose of working them, $5,000, in cash, to be paid to Richardson, one-half of the capital stock of such corporation, and the payment by Handy of $25,000 to the treasurer of the corporation to be used in the development of the property. As the owner of one-half of the stock of the corporation, Richardson, and those holding under him, would, of course, reap one-half of the benefits, whatever they should prove to be, resulting from such expenditure; but there is not even a plausible ground for the assertion that the other stockholders should not also be entitled to their pro rata of the benefits resulting from that expenditure. The development of the property of a cor-

poration necessarily results to the benefit of all of the holders of the stock of the corporation, share and share alike. The want of merit in this position of complainants is made still more obvious, if possible, by the fact that they seek to confine the benefit of the $25,000 paid by Handy to the treasurer of the defendant corporation to that particular portion of the stock allotted to Richardson under the terms of the contract of June 16, 1890, that was retained by him, thus excluding from participation therein the holders of the 20,000 shares assigned by Richardson for value.

Of the stock of the corporation there were owned at the time the assessment, also in question in this case, was levied, 5,000 shares each by W. S. James, Worth, and Clarke, and 15,000 by A. Jenks and wife; and there were then also owned by the estate of Richardson,—he having deceased,—30,000 shares; by Handy, 39,740; by McCray, 250; and by Ames and Hatch, 5 shares each. The assessment was levied on the 31st of August, 1891, upon the entire capital stock of the corporation, and was for 15 cents per share, and was levied for the purpose of constructing a line of larger pipe than the company then had, from the wells to a station on the railroad. The old pipe was a two-inch pipe, which the evidence shows was insufficient for the then needs of the company. The course pursued by the officers of the corporation after the levying of the assessment, and in respect to it, was not only irregular and unlawful, but very naturally gave rise to suspicions on the part of the complainants that a fraud was contemplated in respect to the stock owned by the estate of Richardson. But a careful examination of the record satisfies me that there was not any real intent on the part of any of the defendants to perpetrate such fraud. The evidence shows that Handy was the moneyed man, and controlling spirit, in the corporation, possessing the confidence of all of his associate officers of the company,—he himself being president; that he had agreed to pay the assessment upon his own stock, and upon that of Clarke, McCray, Hatch, and Ames,—the two latter owning, as has been said, but 5 shares each, and the assessment as to them being 75 cents each; that he had agreed to loan Clarke the money to pay his assessment, and that Clarke had executed his note for the amount of his assessment, ($750,) and sent it to Handy, with 3,000 shares of his (Clarke's) stock as collateral security for its payment; and that McCray's 250 shares had been bought by him from Handy upon an executory contract; and that he was paying to Handy the purchase price thereof, in installments, out of his wages.

The testimony is that James, Worth, and Jenks and wife paid the assessment upon their stock, and, although the evidence shows that the books and accounts of the corporation were very loosely kept, there is a frankness about the testimony of Jenks, who was the treasurer of the corporation, that impresses me with its truthfulness. He testifies distinctly that the assessment upon the stock of James, Worth, and himself and wife was in fact paid, and that after the recission of the assessment hereinafter mentioned the money so paid was by him refunded to the parties paying it. The amounts, however, assessed against the stock of Handy, Clarke,

McCray, Hatch, Ames, and Richardson were not paid at the time the assessment became delinquent. Instead of advertising the stock of all of these parties for sale, the 30,000 shares owned by the estate of Richardson only was so advertised. The excuse given by the witnesses for this action is that Handy was then in the northern part of the state, but was intending soon to return to Los Angeles, and had assured the other directors of the company that he would so return, and pay the assessment upon his own stock, and upon that of Clarke, McCray, Hatch, and Ames, prior to the day on which a sale of the delinquent stock would be made, and that these other directors, relying implicitly upon his promise and ability to pay, omitted to advertise for sale the stock of Handy, Clarke, McCray, Hatch, and Ames; it being understood and agreed among them that if Handy should fail to arrive on or before the day of sale, and pay the assessment on that stock, that the sale of the Richardson stock should not take place. The sale was fixed for October 26, 1891, and on October 20, 1891, Handy died, suddenly.

The illegality of this proceeding is, of course, not open to question. But I am inclined to think, from the evidence, that the action of the directors in this respect, while altogether irregular and unlawful, was not in fact prompted by any fraudulent purpose, and was not in furtherance of any fraudulent scheme devised to deprive the estate of Richardson of the stock owned by it. The evidence shows that the production of oil from the wells on the property of the company, instead of increasing, as the parties in interest expected and hoped for, steadily decreased during the months of October and November, 1891, and to such an extent that the necessity for a larger pipe than the old one had ceased. Accordingly, on November 6, 1891, the board of directors of the corporation passed a resolution rescinding the assessment of August 31, 1891, and ordering the treasurer to return the money to those who had paid, which was done. The evidence shows that the reason for this action on the part of the board of directors was that the decrease in the yield of oil had rendered a larger pipe unnecessary, to provide which was the sole purpose of the assessment.

Apart from the somewhat loose and careless manner in which the books and records of the corporation have been kept, I do not discover in the record any evidence of maladministration on the part of the directors, other than their action in respect to the assessment already referred to, and their further action in the preceding month of July, when, at a meeting of the board at which the president, secretary, and treasurer were alone present, they proceeded to vote themselves salaries, as follows: To the president, $400 per month; to the secretary, $100 per month; to the treasurer, $100 per month. It does not need authorities to show that the action of these three officers in thus voting themselves salaries was absolutely void, and the complainants are entitled to a decree so declaring the resolution. It is, however, but fair to say that the evidence shows that at the time this action was taken oil had been struck in every well the company had bored, from two of which

a yield of about 80 barrels per day was being obtained, and that they were buoyant with hope of a greatly-increased yield, and, having been in that respect disappointed, and the yield having steadily decreased, they did not draw, or attempt to draw, any part of the salary so voted to themselves. In all other respects the business of the corporation, so far as the evidence shows, has been well and economically managed.

Such being the circumstances of the case, as I find them to be, I do not think the court would be justified in appointing a receiver, even if authorized to do so in and by its final decree in the cause. A decree in accordance with the views above expressed will be entered.