McCONNELL ET AL., APPELLANTS, v. COMBINATION MINING & MILLING COMPANY ET AL., RESPONDENTS.

(No. 1,795.)

(Submitted February 13, 1904. Decided April 12, 1904.)

*Corporations—Action Against Officers and Directors—Condition Precedent—Complaint—Powers—Ultra Vires—Minority Stockholders—Estoppel — Laches—Ratification — By-Laws—Legality—Salaries of Officers—Powers of Directors—Statutes — Evidence — Sufficiency — Admissibility— Equity.*

1. Though a corporation is necessarily made a party to an action against its officers for fraudulently diverting and misappropriating its funds, and though the action is brought in the name of the plaintiffs, who are minority stockholders, it is in reality on behalf of the corporation.

2. Demand on the officials of a coroporation to bring suit for fraud of officers and directors in misappropriating its funds is not a condition precedent to action by the minority stockholders.

3. Though the allegations of the complaint in an action against the officers and directors of a corporation for fraudulently diverting and misappropriating its funds are not sufficient to entitle the action to be considered as brought on behalf of others than plaintiffs, who are minority stockholders, its sufficiency as an action in plaintiffs' own behalf is not impaired by averments that they bring it for others as well as themselves.

4. A court of equity, having obtained jurisdiction of an action for one purpose, may retain that jurisdiction for all purposes necessary to the complete protection of the plaintiff's rights.

5. In an action by minority stockholders against the officers and directors of a corporation for fraudulently diverting and misappropriating its funds, evidence examined, and *held* sufficient to charge the president and secretary with knowledge of all expenditures made, to whom they were made, and for what purpose.

6. Where a statute authorizes the organization of corporations thereunder for general mining purposes, but does not specify as one of the objects donations for political purposes, such donations are *ultra vires*.

7. Though the majority stockholders of a corporation sanction the acts of its directors and officials in illegally making expenditures of the corporate funds, so as to bind themselves by estoppel, yet such acts are not binding on stockholders who neither took part in the proceedings, nor sanctioned, by act or acquiescence, the making of the expenditures.

8. In the absence of power emanating from the stockholders, from statute, or from by-laws legally adopted, directors of a corporation have no authority to vote a salary to any of their number.

9. A resolution of four directors of a corporation voting three of their number salaries, and giving them back pay, predicated on by-laws previously passed by five directors, including the first mentioned four, is void, under Civil Code, Sections 2970-2976, providing that in all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary, and declaring that every violation of the provisions of the article is a fraud against the beneficiary.

10. Compiled Statutes of 1887, Fifth Division, Section 449, provides that, if a company is organized under that chapter for the purpose of carrying on any part of its business outside the state, the certificate shall so state, and shall also name the locality in the state where its principal place of business is located. *Held,* that the removal of the entire official business of a domestic corporation beyond the state, and acts of the directors in attempting to hold regular monthly meetings and to sit as the board of directors in another state, are *ultra vires*.

11. In an action agaainst the officers and directors of a corporation for fraudulently diverting and misappropriating its funds, it appeared that, during a period of time in which the official business of the company had been removed from the state without authority of law, stockholders' meetings were held annually in the state for the purpose only of electing directors, at which a majority of the stock was represented. At each of these meetings a resolution was passed approving all acts of the directors and officers for the past year. None of the acts of which plaintiffs complain were presented at these meetings. The board of directors, after the suit was brought, at a regular meeting held in the state, passed a resolution ratifying the acts done without the state; some of the defendants voting for and causing its adoption. *Held* insufficient to show a ratification of the *ultra vires* acts.

12. Where a series of illegal acts by a corporation's officers and directors, continuing over a period of several years, is pursued till the commencement of an action against the officers and directors therefor by minority stockholders, laches cannot be predicated of the plaintiffs' delay in bringing suit.

13. Minutes of a stockholders' meeting, consisting of separate sheets of paper pinned to the leaves of a record book, are insufficiently identified to make them admissible.

14. Under Code of Civil Procedure, Section 3130, providing that, when part of a writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, the act of plaintiffs, in an action against the officers and directors of a corporation for fraudulently diverting and misappropriating the corporate funds, in first introducing some insufficiently identified by-laws, though denying the legality of their adoption, renders the others admissible on behalf of the defendants.

15. Where the secretary of a corporation, who is unlawfully paid a salary by the directors, is not a director, and is connected in no way with the fraudulent transactions of the directors in misappropriating and diverting the corporate funds, he cannot be held liable in an action by minority stockholders against the officers and directors for relief against the fraudulent acts, but the officials who caused the money to be paid to him must account therefor.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

Action by O. J. McConnell, administrator of the estate of William Thompson, deceased, and others, against the Combination Mining & Milling Company and others. From a judgment for defendants, and an order denying a motion for a new trial, plaintiffs appeal. Reversed.

*Mr. E. N. Harwood,* and *Mr. E. Scharnikow,* for Appellants.

The decision is against law, because the attempted action of corporate trustees in voting salaries to themselves is void. "It would be a reproach to the administration of justice" to permit such action to stand. (*Butts* v. *Wood,* 37 N. Y. (Ct. of App.) 317; *Martin* v. *Santa Cruz Water Co.,* 36 Pac. 36; *Shattuck* v. *Oakland S. & R. Co.,* 58 Cal. 550; *Wickersham* v. *Crittenden,* 93 Cal. 17; *Wickersham* v. *Crittenden,* 106 Cal. 327; *Smith* v. *Los Angeles I. & L. Co.,* 78 Cal. 289; *Hardee* v. *Sunset Oil Co.,* 56 Fed. 51; *Jones* v. *Morrison,* 31 Minn. 140; *Miner* v. *Bell Isle Ice Co.,* 93 Mich. 97; *Hill* v. *Rich Hill Coal Co.,* 119 Mo. 9; *Ward* v. *Davidson,* 89 Mo. 445.)

*Messrs. Forbis & Evans,* for Respondents.

This action is one brought by plaintiffs on behalf of themselves and other stockholders similarly situated, upon causes of

motion which are alleged to have arisen in favor of the corporation, the Combination Mining & Milling Company, against its officers and directors. The right to sue primarily lay in the corporation, and the stockholders can only maintain the suit upon alleging and showing their inability to obtain relief through the corporation or its officers. Before a stockholder, in such a case, has any standing in a court of equity, he must first show that he has exhausted his remedies within the corporation. The plaintiff to state a cause of action must allege a request upon the directors, or other proper officers, to bring the action, a refusal by them, and then an application to the stockholders to furnish the relief; or else the plaintiff must show that such application to the directors and stockholders would be useless. (Thompson on Corporations, Sec. 4499; Clark & Marshal on Private Corporations, Sec. 543; *Brewer* v. *Boston Theater,* 104 Mass. 378; *Dowd* v. *Wisconsin P. & S. R. Co.,* 65 Wis. 108, 56 Am. Rep. 620; *Rathbone et al.* v. *Parkersburg Gas Co.* (W. Va.), 8 S. E. 570; *Hawes* v. *Oakland,* 104 U. S. 450; *Bill* v. *Western U. Tel. Co.,* 16 Fed. 14; *Foote* v. *Cunard Min. Co.,* 17 Fed. 46.)

The averments as to the refusal of the corporation to bring the action constitute essential elements of the cause of action, and in the absence of allegations of such facts from the pleadings a court of equity has no jurisdiction to entertain the action. This objection is not that the plaintiffs have not the capacity to sue, and is not waived by taking issue upon the merits, but can be raised at any time upon objection that the complaint does not state a cause of action. (*Cogswell* v. *Bull,* 39 Cal. 320; *Dowd* v. *Wis. P. & S. Ry. Co.,* 65 Wis. 108, 56 Am. Rep. 620; *Hawes* v. *Oakland,* 104 U. S. 450; *Merchant & Planters Line* v. *Waganer,* 71 Ala. 582; *Greaves* v. *Gouge,* 69 N. Y. 154.)

The fact that the defendants, who as directors conducted the affairs of said company, were residents of the state of Missouri, could in no wise affect their standing as such directors or impair their official acts. (*McCall* v. *Byram Mfg. Co.,* 6 Conn.

428; *North & South Rolling Stock Co.* v. *People,* 147 Ill. 234; *Com.* v. *Detwiller,* 131 Penn. St. 614.)

In the absence of a statute, and we had not and have not now any such statute in Montana, the meetings held at St. Louis by the defendant directors were as valid as if held in the state of Montana. (Cook on Corporations, Secs. 713a, and 808; *McCall* v. *Byram M. Co.,* 6 Conn. 428; *Arms* v. *Conant,* 36 Ver. 744; *Bellows* v. *Todd,* 39 Ia. 209; *Missouri L. M. & S. Co.* v. *Reinhard,* 114 Mo. 218; *Wood Hy. Hose M. Co.* v. *King,* 45 Ga. 34; *Wright* v. *Lee,* 2 S. D. 596.)

Certainly the plaintiffs, who as stockholders participated in the acts complained of by voting their stock for the removal of the office, are thereby estopped from complaining of the result of such acts, and it is plain from the record in this case that the corporation and all of its stockholders, by acquiescing in the conduct of the affairs of the company, by the board of directors from St. Louis, and permitting without protest the directors to so carry on the business of the company, and by failing to make any objection thereto during all the years to the board of directors or other officers of the company, have precluded themselves from objecting thereto at this time. (Cook on Corporations, Sec. 730; Thompson on Corporations, Sec. 4110; *Bair* v. *N. Y. R. R. Co.,* 125 N. Y. 263; *McGeorge* v. *Big Stone Gap Imp. Co.,* 57 Fed. 262; *Hart* v. *Mt. Pleasant, etc. Co.,* 97 Ia. 353; *Jones* v. *Concord, etc. R. R. Co.,* 30 Atl. Rep. 614; *Underhill* v. *St. Barbara, etc. Co.,* 93 Cal. 300.)

Directors, as other agents, are not liable for honest mistakes either of law or of fact. (Thompson on Corporations, Sec. 4109, and cases cited; Cook on Corporations, Secs. 682, 702; *Hodges* v. *N. E. Screw Co.,* 3 R. I. 9; *Williams* v. *McDonald,* 37 N. J. Eq. 409.)

The rule is well settled that a corporation, no more than an individual, cannot, without knowledge, retain the fruits or benefit of a contract or transaction and still repudiate liability on its part. Even if the notes and other indebtedness were not properly authorized by the corporation in the first instance, by

receiving the money from the bank and Mr. McClure, and retaining and using the same, the company was certainly estopped from denying a proper authorization of the acts of its officers in the first instance, or a subsequent ratification. (Thompson on Corporations, Sec. 5303; Clark and Marshall on Private Corporations, Sec. 716 C, and cases cited; *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 67; *Pittsburgh, Cin. etc. Ry. Co.* v. *Keokuk & Hamilton Bridge Co.*, 131 U. S. 371; *Merchants' Bank of Macon* v. *Central Bank,* 1 Ga. 418.)

Even though no action had ever been taken or attempted by the trustees, in fixing the salaries of the officers, those officers, under the facts in this case, would be legally entitled to every dollar they have received. (Beach on Private Corporations, Sec. 208; Morawetz on Private Corporations, Sec. 508; *Severson* v. *Bi-Metallic, etc. Co.,* 18 Mont. 13; *Felton* v. *West Iron Mt. Min. Co.,* 16 Mont. 81; *Bassett* v. *Fairchild,* 132 Cal. 646; *Henry* v. *Rutland, etc. Ry. Co.,* 27 Vt. 435.)

But the resolution of the directors at the meeting of February 25, 1893, at which four of the directors were present, and the action of the meeting of the board on April 4, 1893, at which five directors were present, the vote of the officers receiving the salaries, not being necessary to the adoption of the resolution or the action of the board at either meeting, were both valid. (Thompson on Corporations, Sec. 8585; *Clark* v. *American Coal Co.,* 17 L. R. A. 557; *Funsten* v. *Funsten Com. Co.,* 67 Mo. App. 559; *Wickersham* v. *Crittenden,* 110 Cal. 332.)

In the absence of any agreement or resolution there was an implied promise to pay for such services as for those of any other agent. (Thompson on Corporations, Sec. 4704 and cases cited; *Smith* v. *Long Island R. R. Co.,* 102 N. Y. 190; *Edwards* v. *Fargo, etc. Ry. Co.,* 33 N. W. 100; *Greenleaf* v. *Norfolk S. R. R. Co.,* 91 N. C. 33; *Missouri River R. R. Co.* v. *Richards,* 8 Kan. 101.)

In the absence of evidence to the contrary, due notice of corporate meetings is presumed. (*Mills* v. *Boyle Min. Co.,* 132 Cal. 95; *Balfour-Guthrie Co.* v. *Woodworth,* 124 Cal. 172;

*Stockton C. H. & A. Works* v. *Houser,* 109 Cal. 1; *Sargent* v.
*Webster,* (Mass.) 13 Metcalf, 497.)

MR. COMMISSIONER POORMAN prepared the follow-
ing statement of the case and opinion for the court:

### PLEADINGS.

The original complaint in this cause was filed September 8,
1898. Subsequently several supplemental complaints and
amendments were filed to meet new conditions arising, or to
put in issue facts alleged to have been discovered after the com-
mencement of the action. It is alleged that the individuals
named as defendants, pretending to act as trustees (directors)
of the defendant corporation, wrongfully abandoned the prin-
cipal office of the company, at Butte, Montana, and moved the
books, records, stock register and papers to St. Louis, Missouri;
that they were proceeding to sell the stock of plaintiffs to satisfy
assessments wrongfully made; and that they had misappropri-
ated funds and other property of the company, and had been
guilty of fraud in connection therewith. The court was asked
to enjoin the defendants from selling the stock, to require the
return of the records to Butte, and that defendants be required
to render an accounting. An injunction was issued, restraining
the selling of the stock, and forbidding the defendants to detain
longer away from Butte the records of the company. The ma-
terial allegations of the complaint were put in issue by the
defendants.

### APPOINTMENT OF REFEREE.

A referee was appointed by the court to hear the evidence,
to make findings of fact and conclusions of law, and report the
same to the court. The referee having made his report adverse
to the contentions of the plaintiff, judgment of dismissal was
entered; and from this judgment, and the order overruling
plaintiff's motion for a new trial, this appeal is taken.

The defendant company was incorporated under the laws of Montana territory, December 27, 1887, for the purpose of carrying on a general mining and milling business; to locate, acquire, sell, develop and work mines and mining claims; and to buy, sell and treat ores; these operations to be carried on at Black Pine mining district, Deer Lodge county, and also at Butte City, Silver Bow county; the business of the company to be transacted at both these places, but the principal office to be at Butte City. The capital stock of the company consisted of $600,000, represented by 300,000 shares of stock, of the par value of $2 each. Seven directors were to manage the affairs of the company. The mines of the company were operated until July or August, 1893, when they were closed down, and remained closed until June, 1895, when operations were resumed and continued until February, 1897, when the mines were again closed, and have not been operated since that time.

At the annual stockholders' meeting held in Butte City, Montana, June 27, 1892, the defendant directors, together with plaintiffs Williams and Joseph H. Harper, were elected directors for the ensuing year. On July 6, 1892, this new board of directors met, but, no quorum being present, adjourned to meet in St. Louis. Plaintiffs Williams and J. H. Harper were present and supported this action. In the published notice of this stockholders' meeting was contained a statement that at such meeting the question of removing the office to St. Louis would be submitted, and the following resolution was introduced: "Resolved, that the home office and directory of the the Combination Mining & Milling Company be removed from the city of Butte, in the state of Montana, to the city of St. Louis, in the state of Missouri, and that the incoming president and board of trustees (directors) be and the seven are hereby authorized and empowered to perform any needful and lawful acts whatsoever necessary or required for the purpose of such removal." 261,429 shares of stock were voted in favor of this

resolution, and 1,600 shares against it.   Plaintiffs Williams, J. H. Harper and Helen C. Harper supported this resolution. The records of the company from this time until the return of the office to Butte, in October, 1898, appear to be in a somewhat chaotic condition.   The treasurer, it appears, kept no record at all.   The secretary's record is in part regular in form, and in part consists of fragmentary scraps and separate sheets of paper written in pencil, containing blanks and marginal notations pinned to the leaves of some book, or laid loosely between the leaves.   Certain writings purporting to be by-laws of the company were also presented.   Some of these records consist of references to resolutions or proceedings by number, without containing the resolutions or proceedings to which they refer. These matters were all offered in evidence, and were, except the loose sheets, admitted, for one purpose or another, over the objections of plaintiffs.

Passing these objections for the time being, and considering these so-called records in connection with the oral testimony in the cause, it appears that Charles D. McClure was president, Paul A. Fusz vice president, M. Rumsey treasurer, and Jesse B. Mellor secretary of the board of directors; that at the meeting of this board held at St. Louis, December 29, 1892, at which were present defendants Ewing, Fusz, M. Rumsey, L. M. Rumsey and President McClure, this proceeding was had:   "That this board does hereby approve the following salaries and office rent, as set by the president:   Secretary's salary $1,250 per annum, messenger's salary $300 per annum, office rent $200 per annum."   That on February 25, 1893, this board held an adjourned meeting at St. Louis, at which were present Vice President Fusz, L. M. Rumsey, Treasurer M. Rumsey and President McClure, and the following proceeding was had: "Mr. Fusz offered, Mr. L. M. Rumsey seconding, that the president be paid a salary of $2,500 per annum; that the vice president be paid a salary of $5.00 per day for each day actually served; that the treasurer be paid a salary of $25 per month, all to date from January 1, 1893.   Adopted."   It further ap-

pears that these defendants, acting as such board of directors, continued to hold meetings at St. Louis, Missouri, until, in obedience to the order of the court, they returned the records to Montana; and at Butte, Montana, October 27, 1898, a directors' meeting was held, at which were present Ewing, Fusz, Rumsey, Williams and one Merrill, who was then a director; absent, McClure and M. Rumsey. At this meeting the minutes of the meeting of November 21, 1891, and July 16, 1892, were also read and approved by all the trustees present, except Williams, who did not vote. The minutes of the various directors' meetings which had theretofore been held in the city of St. Louis were then read and aproved by all of the directors present, except Williams, who did not vote. It appears further that during the time the office was maintained at St. Louis the stockholders' meetings were held at Combination, Montana; these defendants, except Mellor, being uniformly re-elected as directors. The defendant Mellor was at no time a director, but was during this period, in addition to being the secretary of the board of directors, also the private secretary of defendant McClure.

The expenditures and charges to which specific objections are made are:

| | |
|---|---:|
| Pres. McClure, salary as president................................ | $14,374 78 |
| Pres. McClure, expenses attending stockholders' meeting.......... | 75 00 |
| Pres. McClure, attorney's fee.................................... | 500 00 |
| Vice Pres. Fusz, salary as acting president...................... | 1,038 15 |
| Vice Pres. Fusz, attorney's fee.................................. | 400 00 |
| Vice Pres. Fusz, visiting directors in Montana in May, 1896...... | 73 20 |
| Treas. Rumsey, salary as treasurer and acting president.......... | 2,010 28 |
| A. W. Ewing...................................................... | 50 00 |
| Jesse B. Mellor, salary as secretary............................ | 7,760 01 |
| Office boys at St. Louis......................................... | 1,089 85 |
| Telephone ....................................................... | 595 20 |
| Office, office supplies, subscription to newspapers, in St. Louis.... | 2,147 94 |
| Louis S. McClure, as attorney's fee.............................. | 700 00 |
| Bimetallic M. Co., a corp., attorney's fee, in March, 1893........ | 562 55 |
| Also an entry as "inexplainable shortages" from 1896 to 1897..... | 5,076 00 |
| Also an entry in favor of Paul A. Fusz, C. T. Rhodes, Boyd Bros. and W. J. Schofield, for expenses of this suit................. | 1,056 65 |
| Demand note dated Dec. 23, 1896, to the National Bank of Commerce in St. Louis, with interest at 6 per cent. per annum from date ......................................................... | 10,000 00 |

This note is signed "Combination Mining & Milling Co. Chas. D. McClure, Pres." There was also a deposit of 25,418 ounces

of silver bullion, having a value of $16,000, made to secure the payment of this note.

| | | |
|---|---:|---:|
| Demand note dated March 4, 1897, to the National Bank of Commerce in St. Louis, interest at 6 per cent. per annum from date.. | 10,000 | 00 |

This note is signed, "Combination Mining & Milling Co., by M. Rumsey, Acting President." A deposit of 32,172 ounces of silver bullion, then having a value of some over $20,000, was made as security for the payment of this note.

| | | |
|---|---:|---:|
| Demand note dated March, 1899, to State National Bank of St. Louis, interest at 5 per cent. per annum...................... | 3,500 | 00 |

This note is signed, "Combination Mining & M. Co., by M. Rumsey, Acting President."

| | | |
|---|---:|---:|
| "Promissory note or writing obligatory," dated June 18, 1898, to State Bank of St. Louis, due six months after date, with interest at 8 per cent. per annum from maturity...................... | 18,000 | 00 |

This instrument is signed, "Combination M. & M. Co., Chas. D. McClure, President."

| | | |
|---|---:|---:|
| Amount collected on assessment of June 18, 1898................ | 10,605 | 95 |
| Amount claimed to have been loaned and advanced to company by Pres. McClure ............................................. | 9,583 | 30 |
| Maintaining office at Butte since return in October, 1898, at $180 per month ................................................ | ........ | |
| Disposition of the proceeds derived from the sale of the silver bullion deposited as security.................................... | ........ | |

## Opinion.

1.    It is claimed by respondents that it does not appear that plaintiffs had first exhausted their remedy within the corporation, and cannot maintain this suit.    The plaintiffs make no complaint against the corporation as such, or against the other stockholders thereof, but seek relief against the individual trustees and officeholders, who, it is alleged, have been and are now fraudulently diverting and misappropriating the funds of the corporation, and were attempting to sell the stock of plaintiffs to satisfy an illegal assessment levied by the same individual defendants.    The corporation is necessarily made a party to the action.    Though in the name of the plaintiffs, the action is in reality on behalf of the corporation.    (*Beach* v. *Cooper,* 72 Cal. 99, 13 Pac. 161.)

The action being directed against the trustees and office holders, it would be idle to require the plaintiffs to first make the demand against those officials that they bring suit against themselves; and it further appears that one of the purposes for which the suit was brought was to restrain the sale of stock under an assessment levied in St. Louis in June, 1898; that this

stock would become delinquent August 5th of the same year, and would be sold on the 10th of the following September, a period of little over thirty days intervening between the alleged levy of the assessment and the time when the same would become delinquent. If it were possible in that limited time for plaintiffs to counsel with all the other stockholders or call a stockholders' meeting to consider the same, such action would be unnecessary, for the reason that, had all the other stockholders refused to interfere with the assessment, any stockholder owning a single share of stock would have the right to bring the action in his own name to prevent his own property from being sacrificed to satisfy an illegal assessment. If the allegations of the complaint are not sufficient to entitle the action to be considered as brought on behalf of others than the plaintiffs, its sufficiency as an action in their own behalf is not impaired by the averments that they bring it for others as well as for themselves. (*Wickersham* v. *Crittenden*, 93 Cal. 17, 28 Pac. 788.)

In *Forrester et al.* v. *Boston & Montana C. C. & S. Mining Co.*, 21 Mont. 544, 55 Pac. 229, 353, the court says: "The law, which does not demand a request that a person or corporation sue him or itself, nor require the doing of any useless thing, as prerequisite to the accrual of a right of action, will, therefore, in the circumstances here existing, permit the plaintiffs to maintain suit to undo or prevent the acts of directors or stockholders, performed or threatened to be performed, if such acts be, as to plaintiffs, *ultra vires*. (*Gerry* v. *Bismarck Bank*, 19 Mont. 199, 47 Pac. 810; *Miner* v. *Ice Co.*, 93 Mich. 112, 53 N. W. 218, 17 L. R. A. 412; *Forrester et al.* v. *Boston & Montana Cons. C. & S. M. Co.*, 29 Mont. 397, 74 Pac. 1093; *Brewer* v. *Boston Theater*, 104 Mass. 378.)

A court of equity having obtained jurisdiction for one purpose, may retain that jurisdiction for all purposes of the action necessary to the complete protection of plaintiff's rights. (Eaton on Equity, p. 39; 2 Pomeroy, Eq. Juris. par. 181; *Ober* v. *Gallagher*, 93 U. S. 199, 23 L. Ed. 829; *Montana Ore Pur. Co.* v. *Boston & Montana Cons. C. & S. M. Co.*, 27 Mont. 288, 70 Pac. 1114.)

· 2.   The method pursued by the defendant directors ·and offi-
cers in the conduct of the company's business appears to have
been to leave the matter almost wholly with the president and
the secretary.   The president had the custody and control of
the money and funds of the company, and had the authority to
pay the same out on vouchers approved by the president and
attested by the secretary, by checks signed by the treasurer and
the president.   The signing of these checks seems to have been
about the only function performed by the treasurer.   The board
of directors did not appear to have figured in the allowance or
payment of accounts, nor is there anything in the record to the
effect that the board of directors had ever ordered paid any ac-
counts.   The treasurer, it appears, kept no books at all.   The
statements which he rendered would therefore be collated from
the books kept by the secretary and the president.   The presi-
dent and the secretary were therefore charged with the knowl-
edge of all the expenditures made, to whom they were made,
and for what purpose.   The evidence of those two officials rela-
tive to the expenditures charged in the complaint as having been
a misapplication of the funds of the company is very meager.
The president says he did not know what the $75 was paid him
for; it may have been for traveling expenses or board.   The sec-
retary attempts no explanation.   The president further says
that he cannot tell what the $500 paid him as attorney fee was
for, except that it was in relation to salt contracts.   The secre-
tary's meager statements are to the same effect.   The $400 paid
as attorney's fee to defendant Fusz is not explained by the
president, but the secretary and Fusz say it was in connection
with traveling expenses to Utah to investigate a process for
working silver.   No explanation whatever is made of the $73.70
paid to Fusz, as stated on the books, for visiting directors in
1896.   The $50 paid Ewing, it is claimed, was for auditing
books.   The $1,089.85 was for expense of office boys at St. Louis
from 1892 to 1898.   The $595.20 charged for telephone was
used for that purpose at St. Louis during this period.   The
$2,147.94 charged for office supplies, subscriptions to news-

papers, etc., was for rent, stationery and books in St. Louis. The $700 paid to Louis S. McClure as attorney fee was simply paid him by the president, Charles D. McClure, to be used in the "silver cause," though how it was used, and when, or whether at all, the record is silent. The attorney's fee paid the Bimetallic Company, of $562.55, was to assist in paying expenses of a delegation sent to Helena to work for the creation of Granite county. No explanation is attempted of the $5,076 entered as "inexplainable shortages." The $1,056.55 charged in favor of Fusz, Rhodes, Boyd Bros. and Schofield, for the expenses of this suit, are alleged to be expenses incurred by Fusz and Mellor in preparing for the defense of this action. The money received on the two $10,000 notes executed to the Bank of Commerce, St. Louis, it is claimed, was sent to Montana to be used for the benefit of the company. The $3,500 note to the State National Bank of St. Louis, it is claimed, was used for paying the salary of Rhodes and Coy, and for purchasing goods. Rhodes was assistant secretary.

It is claimed that the proceeds of the $18,000 note executed to the State Bank of St. Louis were used in taking up the other two $10,000 notes.

It appears further that $10,605.95 was collected on the void assessment of June 18, 1898, and was paid to the president; that the $9,515.41 claimed to have been loaned to the company by the president was for the purpose of refunding to the stockholders the amount paid in on this void assessment. The president says this amount paid in on this void assessment was used by the company, and he says: "I advanced the amount to the company, and the money was used for care-taking, insurance, taxes, and other necessary running expenses, and interest." He also adds that no salaries were paid out of the above funds to officers. Whether the president has reference to the money loaned by him to the company, or to the $10,605.95 when he says it was used by the company for insurance, taxes, running expenses, etc., and that no part was paid for salaries, cannot be gathered from his general answer. The secretary, Mellor,

in testifying relative to expenditures of the amount paid in on this void assessment, says "that $5,400 of it was retained by the president." Then he corrected that statement, and said the amount retained by the president was $6,364.92. On redirect examination he states that this amount retained by the president was $5,074.79; also that a check was drawn in favor of M. Rumsey for $675; that a check was also drawn in favor of A. W. Ewing for $50; that another check was drawn in favor of Mr. Fusz for $487.50. None of these checks had been paid. The only explanation of the $180 per month charged for maintaining the office in Butte is that "it is necessary expense." The record shows that $35 of this was for rent. What the other was for is not explained. The testimony further shows that $250 per year is the reasonable expense of maintaining the company's office at Butte, and doing the necessary bookkeeping, and that $5,000 per year was ample to protect the company's property and to pay the insurance and taxes.

On the....day of...., 1900, the National Bank of St. Louis brought suit in the United States circuit court for the district of Montana against the defendant company, and recovered judgment by default against said company for the amount of the $3,500 note, and also for the amount of the $18,000 note, which had been assigned to the plaintiff; the amount of said judgment being $29,903.06. Execution was issued, and the personal property of the defendant company sold to the Bimetallic Mining Company, a corporation operated by defendants, for $800, and the real estate was sold to the plaintiff in that action for $29,075. Defendant Chas. D. McClure also obtained a default judgment against the defendant company for $9,583.30, for the money alleged to have been loaned by him to repay the void assessment, and for $67.89 paid out on account of the company. Sale of this property under execution was made on May 11, 1900. In the statement made by Treasurer M. Rumsey, on January 6, 1898, the personal property belonging to the company is listed, with a value thereof, and amounts to several thousand dollars. One diamond drill alone

is listed at $3,247.60. The return of the United States marshal does not specify the items of personal property sold. The defendant corporation was not operating its mines during any of this period, and the record does not contain any explanation of this enormous decrease in the value of its personal property. When the company closed its operations in 1893, the reasons for such action given was the low price of silver. In 1895, when operations were resumed, it is shown that silver was still lower than when the company closed in 1893, but the defendant alleged that it was for the purpose of working off supplies then on hand; yet it appears that in February, 1897, when operations were finally closed, the company had on hand more than $20,-000 of supplies, and it is not in the record that any disposition was ever made of them.

The record does not contain any specific authority from the board of trustees to any of the officials to negotiate these loans or to execute these notes; neither does the entry of any of these charges in the books of themselves, in the form there appearing in the light of this evidence, show that the expenditures were for legitimate corporate purposes, the plaintiffs having shown that neither of the parties to whom an attorney's fee was credited was in fact an attorney. Under the rule which the officials claimed was their guide, the president and secretary were to be given vouchers for these several expenditures, but at this hearing these vouchers were either not produced, or, if produced, they contained no information as to what the items were expended for. It is claimed by defendants that the word "attorney" should be read "agent." The donation to Louis S. McClure and to the Bimetallic Mining Company were clearly outside of the purposes for which the corporation was created, both being for strictly political purposes. The statute specifies the purposes for which corporations may be created. Political purposes do not appear in the enumeration. The stockholders of the company, for aught the record here shows, were not unanimous in their political beliefs, or in the desire to have this new county created. It is also possible that a majority of the stock-

holders may have sanctioned all these actions of these directors and of these officials in such a manner as to be binding upon them, but, if so, it is on the ground of estoppel, and is not binding upon those stockholders who did not take part in these proceedings, or sanction, by act or acquiescence, the making of these expenditures. (Cook on Corp. par. 657.) It further appears that the deposit of 57,590 ounces of silver made as security for the payment of the two $10,000 notes was withdrawn and sold, but there is no evidence as to what became of the proceeds.

3.  On February 25, 1893, four of the defendant directors assembled at St. Louis, and, on motion of Vice President Fusz, voted three of their number, to-wit, President Charles D. McClure, Vice President Paul A. Fusz and Treasurer M. Rumsey, the salaries before mentioned. This resolution not only fixed the salaries of these officials, but gave them back pay from the 1st day of January, 1893. Officers of a corporation are not, as of right, entitled to salaries. Neither has the board of directors the inherent power to vote a salary to any director. The power so to do must emanate from the stockholders, from statute or from by-laws legally adopted.

In *Blue* v. *Capital National Bank,* 145 Ind. 518, 43 N. E. 655, the court, at page 521, 145 Ind., and page 656, 43 N. E., says: "In Thompson, Com. on the Law of Corp. Vol. IV, Sec. 4682, the rule with reference to the question presented by this plea is stated thus: 'The president of a corporation is always a member of its board of directors. In addition to his ordinary duties as a director, it is his function to preside at meetings of the board, and, together with the secretary, and by means of the corporate seal, where a seal is required, to authenticate the formal acts and contracts of the corporation. In respect of his right to compensation, he is subject ordinarily to the rule already stated with regard to directors: he is not entitled to any compensation for performing the ordinary duties of his office, unless the governing statute, or some by-law, regulation, resolution or contract, to which his own vote was not essential, has given it to him. As the law does not imply an agreement to pay

for such services, in order for him to recover compensation for them he must at least show an antecedent, valid agreement to pay for them.' That the proposition stated in the text is correct, we have no doubt; that it is well fortified by the decisions, we know; and that the same rule applies to the office of vice president, it is needless to suggest. * * * Section 4380, Thompson, Com. Corp.; *Loan Ass'n* v. *Stonemetz,* 29 Pa. St. 534; *Cheeney* v. *Lafayette, etc. Co.,* 68 Ill. 570, 18 Am. Rep. 584; *New York, etc. Co.* v. *Ketchum,* 27 Conn. 170; * * * *Kilpatrick* v. *Penrose Bridge Co.,* 49 Pa. St. 118, 88 Am. Dec. 497; * * * *Hall* v. *Railroad Co.,* 28 Vt. 401, 406; *Bliss* v. *Matteson,* 45 N. Y. 22; * * * *Maux Ferry, etc. Co.* v. *Branegan,* 40 Ind. 361."

In *Pfeiffer* v. *Lansberg Brake Co.,* 44 Mo. App. 59, the court holds that one who is both a secretary and a director of a corporation is not entitled to compensation for services as secretary in absence of specific prearrangement therefor. On page 62 the court says: "The cases hold with great unanimity that the directors of a corporation are not entitled to compensation for their services as directors, unless by statute, by-law or prior action of the stockholders; that the law does not imply a promise on the part of the corporation to pay for such services; and that they cannot vote themselves compensation for such services after the services have been rendered." Citing a number of cases, among which appear *Eakins* v. *White Bronze Co.,* 75 Mich. 568, 42 N. W. 982; *Ashton* v. *Dashaway Ass'n,* 84 Cal. 61, 22 Pac. 660, 23 Pac. 1091, 7 L. R. A. 809; *Wood* v. *Lost Lake, etc. Co.,* 23 Ore. 20, 23 Pac. 848, 37 Am. St. Rep. 651.

In *McMullen* v. *Ritchie,* (C. C.) 64 Fed. 253, the court holds that, in the absence of resolution or by-law, an officer of a corporation cannot predicate a claim against the company for services rendered as such officer. See, also, *Danville, H. & W. R. Co.* v. *Kase,* (Pa.) 39 Atl. 301; *McCarthy* v. *Mt. Tecarte L. & W. Co.,* 111 Cal. 328, 43 Pac. 956.

Defendants claimed that the board possessed this power under authority conferred by certain provisions of what they claim

are the by-laws of the corporation, and which were put in evidence by the defendants. Section 454 of the Fifth Division of the Compiled Statutes of 1887 conferred upon the directors of a corporation the authority to make by-laws. Whether the by-laws introduced in evidence in this case were ever legally adopted, so as to make them binding upon the stockholders or the corporation, will be hereafter considered. They are at least in this action binding upon the defendants. It appears to be a fact admitted that the five defendant trustees held a meeting in St. Louis, Missouri, December 1, 1892, and adopted this code of so-called by-laws, conferring upon themselves the authority to vote salaries, and then, under the authority thus conferred, proceeded afterwards to vote three of their number the salaries complained of. This action of the officials in voting themselves salaries cannot be sustained, and the resolution must be declared wholly void. (Section 2970 *et seq.,* Civil Code.)

In *Wickersham* v. *Crittenden,* 106 Cal. 327, 39 Pac. 602, the court holds that a salary, whether a fair one or not, voted by the trustees of a bank to one of their number as president, is unlawful, and he may be compelled to account therefor, where he took part in the proceedings, and his vote was essential to the adoption of the resolution.

*Martin* v. *Santa Cruz Water Storage Co.,* (Ariz.) 36 Pac. 36, was an action by a secretary of a corporation to recover his salary. It appears that the by-laws adopted by the corporation authorized the board of directors to appoint a secretary and fix his salary. The board consisted of five directors. Three of these directors met, and voted one of their number a salary as secretary. The supreme court, in affirming the judgment in favor of the defendant rendered in the district court, uses the following language: "The appellant was a director of the corporation, and intrusted with its interest in a fiduciary capacity. He owed to his principal his fair, impartial and disinterested judgment in fixing the salary of its secretary. The corporation had the right to demand of him his entire vigilance in its behalf. It is intolerable that an agent be suffered to act at the same

time, in the same matter, for himself and principal too. The result of such a course, if allowed, would be manifest. The act of a fiduciary agent in dealing with the subject-matter of his trust, or the interest intrusted to his care and keeping, to his own individual gain and profit, is viewed by the courts with great jealousy, and will be set aside on slight grounds. The doctrine is founded on the soundest morality, and is frequently recognized. *Oil Co.* v. *Marbury,* 91 U. S. 587, 23 L. Ed. 328. All transactions so tainted are voidable, without regard to the fairness or honesty of the act. *Graves* v. *Mining Co.,* 81 Cal. 303, 22 Pac. 665. And so a director of a corporation cannot vote himself a salary. *Ward* v. *Davidson,* 89 Mo. 445, 1 S. W. 846; *Butts* v. *Wood,* 37 N. Y. 317. The rule is enforced with great rigor against officers voting themselves salaries. Thomp. Liab. Off. 351. They cannot properly act on, nor form part of a quorum to act on, a proposition to increase their compensation. *Bank* v. *Collins,* 7 Ala. 95. Certainly they cannot vote themselves 'back pay.' It is like giving away the assets of the corporation. Cook, Stocks & S. Sec. 657, p. 756; *Holder* v. *Railroad Co.,* 71 Ill. 106, 22 Am. Rep. 89." See, also, *Wickersham* v. *Crittenden,* 93 Cal. 17, 28 Pac. 788; *Hardee* v. *Sunset Oil Co.* (C. C.) 56 Fed. 51.

In *Jones* v. *Morrison,* 31 Minn. 140, 16 N. W. 854, the court, in considering the legality of the act of four directors of a corporation in voting three of their number salaries, says: "They are agents of the corporation, and, as in cases of other agents, their acts on behalf of their principal, in matters where their own interests come in conflict with those of the corporation— where their self-interest may tend to deprive the corporation of the full, free and impartial exercise of the judgment and discretion which they owe to their principal—are looked upon and scrutinized with great jealousy by the courts. Their acts in such cases are *prima facie* voidable at the election of the corporation or of a stockholder. *Cumberland Coal, etc. Co.* v. *Parish,* 42 Md. 598; *Coleman* v. *Second Ave. R. Co.,* 38 N. Y. 201; *Hoyle* v. *Plattsburgh & M. R. Co.,* 54 N. Y. 314, 13 Am. Rep.

595; *Blake v. Buffalo Creek R. Co.*, 56 N. Y. 485; *Covington, etc. R. Co. v. Bowler*, 9 Bush. 468; *Paine v. Lake Erie, etc. R. Co.*, 31 Ind. 283; *Port v. Russell*, 36 Ind. 60, 10 Am. Rep. 5; *Cook v. Berlin Woolen Mill Co.*, 43 Wis. 433; *European, etc. Ry. Co. v. Poor*, 59 Me. 277; *Bestor v. Wathen*, 60 Ill. 138; *Harts v. Brown*, 77 Ill. 226; *Simons v. Vulcan Oil, etc. Co.*, 61 Pa. St. 202, 100 Am. Dec. 628; *Rice's Appeal*, 79 Pa. St. 168; *First Nat'l Bank v. Gifford*, 47 Iowa, 575; *Gardner v. Butler*, 30 N. J. Eq. 702. The rule is applied rigorously to votes giving themselves compensation. Thompson on Officers of Corporations, 351, and note; *Maux Ferry Gravel R. Co. v. Branegan*, 40 Ind. 361." To the same effect are the decisions in *Miner v. Ice Co.*, 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Ten Eyck v. Pontiac, etc. R. Co.*, (Mich.) 3 L. R. A. 378, note; *Ward v. Davidson*, 89 Mo. 445, 1 S. W. 846; *Hill v. Rich Hill C. M. Co.*, 119 Mo. 9, 24 S. W. 223; Cook, Corp. (5th Ed.) 657; 10 Cyc. of Law Proc. 899.

4.   It is claimed that it was advantageous to the company to have its office at St. Louis; that it could purchase its supplies with two other companies operated by defendants; could get a lower rate of interest; and that St. Louis was a good silver stock market. Why all this could not have been accomplished through an office in Montana is not apparent. The record shows that the principal supplies required by the company were quicksilver, powder, salt, mining machinery and mining supplies; that all these were purchased in California, Utah, Montana and at Chicago; and that the product of the mines was silver bullion, which was marketed in New York. There is some evidence to the effect that defendant L. M. Rumsey sold some supplies to the company on competitive bids, but neither the character nor the amount of these supplies is stated. It is not explained what advantage the company received from a telephone service at St. Louis, or from the employment of office boys there, when all the actual mining operations were carried on in Montana; Neither does it appear that this company received any benefit whatsoever by reason of maintaining the office at St. Louis that

would not have accrued to it, had the office been kept at the place designated in the articles of incorporation. Neither can the charge of $1,056.65 made by defendants Fusz and Mellor against the defendant corporation as cost incurred by them in preparing their defense in this action be sustained.

5. The law under which this company was incorporated is Chapter 25, Fifth Division, Comp. St. 1887. That statute provided that the certificate filed with the secretary of the territory should designate the city, town or locality and county in which the principal business of the company should be transacted. Section 449. That section also provided that the company might designate a place of business outside of the territory, but the certificate should so state.

Sections 468 and 486 of the same division provided the manner in which a company organized under that chapter, or prior to the enactment of that law, might come under, and avail itself of, the privileges and provisions in said chapter granted.

This company, it will be noticed, did not follow this procedure in the removal of its office to St. Louis. That statute undoubtedly means that the company, while maintaining its principal office within the state, may designate a subordinate office outside of the state; but there is no law any place which authorizes the removal of the principal office from the jurisdiction in which the company was created. The resolution passed at the stockholders' meeting in June, 1892, provides for the removal of the home office and directory of the company from the city of Butte to the city of St. Louis. The testimony is that this office was actually moved to St. Louis, and that the books, papers and records of the company were taken to St. Louis, and that the office at Butte, designated in the articles of incorporation as the principal office of the company, was actually closed and abandoned. By reason of this action the records of the company were removed beyond the jurisdiction of the state in which the corporation was created, and where it actually transacted its mining business. The funds of the company were also removed. The record of the actions of the board of directors was kept at

St. Louis. Expenditures were made from there. The stock books were kept there—all beyond the reach and jurisdiction of the state of Montana. Local stockholders had no means of ascertaining just what was done by the board of directors, except by journeying to St. Louis. These acts were without warrant or sanction of law, and must therefore be held *ultra vires,* and not binding on any one who did not participate therein.

It is true that corporations organized in one state may transact business in a foreign state. It is likewise true that persons who deal with corporations in such foreign state may be estopped from disputing the validity of the transactions. But we know of no principle of law that authorizes a corporation to move its principal business office from and beyond the jurisdiction of the state in which the corporation was created.

In *MacGinniss* v. *B. & M. Cons. C. & S. M. Co.,* 29 Mont. 428, 75 Pac. 89, this court uses this language: "The officers of a corporation are trustees. By their acts in engaging in an unlawful enterprise, and making the corporation a party to it, they are guilty of a breach of trust, and both they and the corporation can be held to account by a court of equity, at the suit of a minority stockholder who has not participated in the vioviolation of the law."

It is also true that directors of a corporation may transact much business outside of the state, but they have no right to move the entire official business of the corporation beyond the state, and the acts of these directors in attempting to hold regular monthly meetings and to sit as the board of directors of the corporation at St. Louis, Missouri, were acts *ultra vires.*

6. It is also claimed by the defendants that these various acts of the board of directors were subsequently ratified by the board at a regular meeting held in Butte, Montana, October 27, 1898, and at the various stockholders' meetings held at Combination, Montana, during the time that the directors were maintaining the office in St. Louis. The action of defendants in meeting at Butte after the commencement of this action, and attempting by their own votes to ratify their own previous ac-

tions, of which complaint is here made, can have no significance in this case. At each of the various meetings held in Combination, Montana, during the time that the trustees were maintaining the principal office in St. Louis, Missouri, the following resolution was passed: "Resolved, that all the acts of the trustees and officers of this company in conducting its business for the year last past and now closed, be and the same is hereby approved." It appears, however, that none of the matters complained of in this suit were presented to the stockholders. The only purpose for which these meetings were called, as stated in the notice, was to elect directors. No other business was specified. No statements were presented as to the conditions of the company or as to what business had been transacted by the directors. These meetings were attended in person by only a few of the stockholders, though proxies for a majority of the stock were present. The defendants and their friends held a majority of this stock. The resolution appears to be the same in substance as that quoted in *Farmers' Loan & Trust Co.* v. *San Diego St. Car Co.,* (C. C.) 45 Fed. 518, which in that case was held insufficient as a ratification. As stated in *Martin* v. *Santa Cruz Water Storage Company,* above cited: "The act claimed as a ratification is not a direct, substantive act, with that object in view." We have, as a result, should we treat this action as a ratification, some of these very defendants who voted for this resolution, and who, we are justified in saying from this record, caused its adoption, indorsing and ratifying their own wrongful acts, which cannot be permitted.

It is further claimed that the plaintiffs have been guilty of laches. There might be some force in this contention if the complaint here made only went to a single act, but the same course of conduct was pursued up to the very commencement of this proceeding. There is no room here for any claim that either the corporation or the minority stockholders have acquiesced in or ratified this conduct. (*Miner* v. *Ice Co.,* 93 Mich. 112, 53 N. W. 218, 17 L. R. A. 412.)

7. Certain matters were admitted in evidence, over the ob-

jections of the plaintiffs, the competency of which has not here-
tofore been passed upon.  The record of the stockholders' meet-
ings held in Montana during the time that the office was kept
at St. Louis, and certain parts of the so-called by-laws, were ad-
mitted over the objection that they had never been legally
adopted.  Objection was also made to certain parts of the depo-
sitions of witnesses McClure and Fusz.  All this evidence was
considered by the referee and court at the trial, and has been
herein treated as forming a part of this record, but the objec-
tions have not been passed upon.  The minutes of the stock-
holders' meetings consisted of separate sheets of paper pinned
to the leaves of a record book, and this was their only identifica-
tion.  This was insufficient.  These minutes should have been
rejected as not properly identified.  In the matter of the intro-
duction of the by-laws, the plaintiffs had first introduced a part
thereof with a reservation that they did not admit their legality,
but at the same time maintained that they were not legally
adopted.  These by-laws introduced by plaintiffs, as well as
those introduced by defendants, were all recorded in the same
book, and, the plaintiffs having introduced a part of the by-laws
over the objections of defendants, the defendants had the right
to introduce the remaining part.  (Section 3130, Code of Civil
Procedure.)

The objections made to the depositions of the witnesses Mc-
Clure and Fusz were principally to the effect that their answers
to some of the questions were not responsive, were indefinite
and evasive, or were conclusions of the witnesses.  It must be
admitted that a part of the testimony of these witnesses is not
of that certain and positive characer which a *cestui que trust*
has a right to expect and demand from his trustee, but we find
no reversible error in its admission in this particular action.

8.  It appears affirmatively from the record that no part of
the money paid to or withheld by the defendants as salaries was
on account of any services performed by them in or about the
operation of the company's mines.  On the contrary, it appears
that no such services were performed by defendants, and that

a sum exceeding $13,000 was paid as salaries while the mines were lying idle. Defendant Mellor says he never resided in Montana. His services as secretary, for which he was paid more than $7,000, were confined to St. Louis. The necessity for negotiating these loans at St. Louis, for the repayment of which the company's property was sold on execution, was caused, if such necessity did in fact exist, by the wrongful act of the defendant directors in voting the salaries to the president, vice president and treasurer, and to their secretary stationed at St. Louis. These acts of the directors are made fraudulent by the provisions of Civil Code, Section 2976. (*Miner* v. *Ice Co., supra.*) Defendant Mellor was, however, at no time a director, nor does the record connect him with any fraudulent transaction. The officials, however, who caused this money to be paid to him, may be required to account therefor.

We recommend that the judgment and order be reversed, and that the cause be remanded to the district court for further proceedings.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are reversed, and the cause is remanded, with directions to the district court to set aside its findings and to proceed in accordance with the views therein expressed.

Rehearing granted July 8, 1904.